276 N.J. Super. 199 (1993)
647 A.2d 869
WARREN ABRAHAMSEN, JOYCE ABRAHAMSEN, FERRIS ANTOON, DEANNA ANTOON, JEFFREY ANTOON, ROBERT BARRY, MICHAEL BASSO, DEBORAH BASSO, VERONICA BATTAGLIA, JACKSON BLAIR, MARGARET BLAIR, JEFFREY BONNER, RICHARD BRUSCA, JOSEPHINE BRUSCA, DIANE CALIFANO, JOHN COFFEY, KENNETH COLEMAN, MARY COLEMAN, JOSEPH COLETTI, ELAINE COLETTI, ALFRED CONHAGEN, III, BARBARA CONHAGEN, HARALAMBOS DAKAS, MARIA DAKAS, LORI DARS, CHAUNCEY DAVIS, WILLIAM DEMETER, HERMINA DEMETER, ROBERT FARRELL, ROSEMARY FARRELL, HOWARD FISHER, ANN FISHER, ANTHONY FOTI, MARGARET FOTI, MICHAEL FRIEDMAN, CANDY FRIEDMAN, JAMES GARRAHAN, FRANCES GERMAINE, ELLEN GERMAINE, MARIE GILLESPIE, MORRIS GLIKLICH, BETTY GLIKLICH, ROBERT GOLDEN, GALE GOLDEN, TED GRAY, COLEEN GRAY, DENNIS GRIBBEN, ALAN GUTKOWSKI, ROBERT HESSLEIN, JAMES HIGGINS, CHRISTINE HOIE, DEREK JANOWICZ, BARBARA JANOWICZ, CRAIG KAHL-WINTER, DYANNA KAHL-WINTER, JACQUELINE KAST, JAMES KULAGA, MAUREEN KULAGA, JOSEPH LAPRESTI, BILLIE LAPRESTI, ALLISON LEHMAN, FREDERICK LEONG, JOHN LITOWINSKY, CARMINE LOMANTO, ROBERT MAGNARELLI, THOMAS MAHER, GEORGE MANUEL, PATRICIA MARRA, FAE MARTOCCI, JOSEPH MASSARO, LOUIS MASSARO, MAE MASSARO, SALVATORE MASSARO, ANNMARIE MASSARO, SALVATORE MASSARO, JR., EMMA MENZZOPANE, DAVID MILLER, CYNTHIA MILLER, EDWARD MINISTRI, EDWARD MONSAERT, DORIS MONSAERT, TOM MOTTO, FRANCESCO A. MUSSORRAFITI, ANGELINA C. MUSSORRAFITI, JOSEPH MUSSORRAFITI, ROBERT NEGRA, HENRY NEWTON, SHIRLEY NEWTON, JOSEPH PALLITTO, YIN PAN, HELEN PRIDE, GUY RAYNER, MARIE REBALKO, JAMES REESE, WAYNE RICKARD, KATHERINE RICKARD, DOLORES ROBINSON, HENRY ROBINSON, STEVEN ROCHE, DONNA RUDDY, ANGELA SCOTTI-CHESWICK, DAVID STEIN, EDWARD T. TOGNOLA, PATRICIA A. TOGNOLA, GUY VANDERVLIET, NANCY VANDERVLIET, FRANK VERANO, EDITH VERANO, LLOYD WALLING, GAIL WALLING, PATRICIA WARDELL, PAUL WEINSTEIN, THOMAS WHITE, RONALD WOLLNER, THERESA YOURIE, CHARLES ZEBROWSKI, MICHAEL ZILLY, PATRICIA ZILLY, PLAINTIFFS,
v.
LAUREL GARDENS LIMITED PARTNERSHIP, A NEW JERSEY LIMITED PARTNERSHIP, EATONTOWN-LAUREL ASSOCIATES, INC., A NEW JERSEY CORPORATION, HARBEN MANAGEMENT CO., INC., HARRY B. BRAUNSTEIN, BENJAMIN B. BRAUNSTEIN, STANLEY BENOWITZ, BERNICE KAHN, LAUREL GARDENS CO-OP, INC., A NEW JERSEY CORPORATION, POUGHKEEPSIE SAVINGS BANK, FSB, RIVERDALE TIMBER RIDGE, INC., STEPHEN H. SCHUSTER AND NETWORK APPRAISAL COMPANY, INC., JOHN DOES 1-10 AND ABC CORPS. 1-10, Defendants.
Superior Court of New Jersey, Law Division Monmouth County.
Decided December 17, 1993.
Amended Opinion Filed January 18, 1994.
*202 Robert J. Cirafesi for Plaintiffs (Wilentz, Goldman & Spitzer, attorneys).
S. Robert Allcorn for Defendants (Rabner, Allcorn & Meislik, P.C., attorneys).
FISHER, J.S.C.

I

INTRODUCTION
This case involves the interpretation and construction of New Jersey's Planned Real Estate Development Full Disclosure Act (PREDFDA)[1], an act which has been rarely examined by our courts. One hundred eighteen owners (plaintiffs) in a cooperative real estate development known as "Laurel Gardens" in Eatontown, New Jersey, claim that the developers, successor developers, and certain principals involved in the Laurel Gardens project made, or had knowledge of, material misrepresentations in a Public Offering Statement in violation of PREDFDA. Defendants Poughkeepsie Savings Bank (the Bank) and Riverdale Timber Ridge, Inc. (Riverdale) now move to dismiss the Second Amended *203 Complaint for failure to state a claim upon which relief may be granted. This motion requires this court to determine the validity of the novel arguments raised by plaintiffs as to the reach of PREDFDA to lenders and successor developers.

II

THE GOVERNING STANDARD
Plaintiffs' version of the facts, as set forth in their Second Amended Complaint, must be deemed true for purposes of this motion to dismiss. Printing Mart v. Sharp Elec., 116 N.J. 739, 746, 563 A.2d 31 (1989). Plaintiffs, of course, are entitled "to every reasonable inference of fact." Id. Accordingly, the court must "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252, 128 A.2d 281 (App.Div. 1957).

III

THE FACTS
In compliance with the governing standard, the court will rely upon the Second Amended Complaint for an accurate dissertation of the relevant facts.
In or about November 1985, defendant Laurel Gardens Limited Partnership (the limited partnership) purchased the Laurel Gardens two hundred thirty-six unit garden apartment complex. Second Amended Complaint, ¶ 16. The Bank extended a loan to the limited partnership and placed a first mortgage against the property in the amount of $6,765,000.00. Id.
Thereafter, the limited partnership prepared and filed a public offering statement and plan of conversion for the development of the project. The plan, as amended in August 1987, was filed with *204 the Division of Housing and Urban Development of the New Jersey Department of Community Affairs. That plan called for the sale of the property to Laurel Gardens Co-Op, Inc. (LGCI), in September 1987, for 89,600 shares of stock and an $11,000,000 wrap-around purchase money mortgage loan. Id. at ¶ 17.
In the summer of 1987, the marketing and sale of shares of the project commenced. Id. at ¶ 18. In the summer or early fall of 1987, the tax assessor of the Borough of Eatontown advised the limited partnership that the future real estate taxes set forth in the public offering statement had been substantially underestimated. The limited partnership, it is alleged, thereafter proceeded to sell shares in LGCI without amending the public offering statement, or otherwise advising purchasers, of the underestimation of real estate taxes. In December 1988, plaintiffs were notified of an increase in their maintenance fees of more than twenty-two percent as a result of the substantial increase in real estate taxes.
One year later the Bank lent the limited partnership an additional $280,000. Sometime in 1990 the limited partnership defaulted in its obligations to the Bank. Subsequently, the Bank and representatives of the cooperative entered into a "work-out" of the defaulted loan, whereby the Bank and its wholly-owned subsidiary (Riverdale) purchased the remaining unsold shares of the cooperative. In addition, the Bank and Riverdale took seats on  and control of  the cooperative's governing board.

IV

THE SCOPE OF PREDFDA
Plaintiffs conclude that the Bank and Riverdale "exercised control of, and to this day control, the cooperative's governing board" by way of the actions outlined above, and are thus specifically included within the scope of PREDFDA. Plaintiffs assert that, because of their control of the cooperative, the Bank and Riverdale may be held liable under N.J.S.A. 45:22-37c for the alleged material misrepresentation of real estate taxes contained *205 in the public offering statement. That statute expressly holds developers, as well as any person who "directly or indirectly" controls the developer, liable to the purchaser for a PREDFDA violation.
Plaintiffs base their claim that the Bank and Riverdale "directly or indirectly" controlled the developer on two distinguishable factual scenarios: (1) the lending actions of the Bank prior to the issuance of the public offering statement, and (2) the actions of the Bank and Riverdale in purchasing the remaining unsold shares of the cooperative, and in taking seats on the board of directors, after the events which gave rise to the claim of misrepresentation became known to plaintiffs. In ascertaining whether either set of circumstances gives rise to liability under PREDFDA, it is helpful to examine each factual scenario separately.

A. The August 1991 Actions
N.J.S.A. 45:22-37a renders liable persons who have made "an untrue statement of material fact" in a public offering statement. Subsection c of that statute renders liable any person who "directly or indirectly" controls a person liable under subsection a. Plaintiffs argue that subsection c is broad enough to include an entity that came into control after the dissemination of an allegedly false public offering statement.
According to plaintiffs, the Bank and Riverdale purchased the remaining unsold shares, and took seats on the board of directors in or about August 1991. See Second Amended Complaint, ¶ 45. It cannot be contested that these actions occurred not only after the dissemination of the public offering statement but also after the plaintiffs asserted their claims. As set forth in ¶ 46 of the Second Amended Complaint, the Bank and Riverdale "were fully aware at the time of their purchase ... of the claims and potential claims of the plaintiffs herein," and plaintiffs continually and vigorously urge this fact as the centerpiece of their claim against the Bank and Riverdale. That assertion, however, necessarily excludes any affirmative act or omission with regard to the public *206 offering statement. Accordingly, the August 1991 actions of the Bank and Riverdale do not give rise, as a matter of law, to any claim upon which relief may be granted, unless  as plaintiffs urge and defendants dispute  PREDFDA renders "successors" liable for the violations of their predecessors.
The accuracy of this legal contention does not turn on a factual dispute; that the Bank and Riverdale took control of LGCI in August 1991 with knowledge of the alleged misrepresentation is assumed true for purposes of this motion. Rather, the issue turns on the interpretation and construction of the statutes in question. Indisputably, N.J.S.A. 45:22A-37 makes no reference to the liability of a "successor" for a predecessor's untrue or misleading statement in a public offering statement. Subsection c defines persons who may be liable under PREDFDA as only those "who directly or indirectly" control a developer liable under subsection a. The wording of those provisions alone leaves no room for an inference that the Legislature intended to hold successors liable for misrepresentations contained in a public offering statement, and thus lends no support to the theory urged by plaintiffs.
Plaintiffs refer to N.J.S.A. 45:22A-36c to support their theory. That provision, which governs service of process and the assertion of personal jurisdiction in such actions, states:
If any person, including any nonresident of this State, engages in conduct prohibited by this act or any rule or order hereunder, and does not file a consent to the service of process, and personal jurisdiction over him cannot otherwise be obtained in this State, that conduct authorizes the agency to receive service of process in any noncriminal proceeding against him or his successors which grows out of that conduct and which is brought under this act or any rule or order hereunder, with the same force and validity as if served on him personally. (Emphasis added.)
The emphasized phrase serves as the springboard for plaintiffs' theory. But for this single phrase in the service of process provision, this court could unhesitatingly hold that taking control of the development, long after the plaintiffs became aware of the alleged underestimation of real estate taxes in the public offering statement, would not render the Bank or Riverdale liable under N.J.S.A. 45:22A-37. Standing alone, N.J.S.A. 45:22A-37 could hardly permit one to be held accountable under this act for a *207 misrepresentation or omission in a public offering statement as a result of actions taken after the issuance of that public offering statement, and after the victims of the misrepresentation have obtained knowledge of the circumstances. But the service of process provision quoted above, according to plaintiffs, suggests that some form of action may exist against a "successor" to one who engages in the prohibited conduct.
It is odd that PREDFDA's only suggestion that a claim against a successor to a developer may be maintained appears in the section that concerns service of process and personal jurisdiction. No other provision in PREDFDA remotely intimates that a successor may be held liable for the actions of its predecessor. Neither the definition section (N.J.S.A. 45:22A-23), nor any other provision, sheds any light on the meaning of the aforementioned phrase in N.J.S.A. 45:22A-36c. Because of the questions raised as to the breadth of PREDFDA during oral argument, the parties were given an opportunity to provide any further guidance which additional research might reveal. The court was particularly interested in obtaining any legislative history with respect to either PREDFDA or any other statute designed to prohibit conduct similar to that prohibited by PREDFDA that might illuminate the Legislature's intent. Despite the benefit of the parties' thoughtful supplemental briefs, the legislative history remains elusive, and the few enactments similar to PREDFDA provide few clues in the pursuit of a solution to this debate.
Movants referred to four other enactments that contain the "directly or indirectly" language of N.J.S.A. 45:22A-37. See, e.g., N.J.S.A. 45:15-16.47c (the Real Estate Sales Full Disclosure Act); N.J.S.A. 45:22A-16(c) (the Retirement Community Full Disclosure Act); N.J.S.A. 49:3-71(b) (New Jersey's Blue Sky Law); N.J.S.A. 49:5-15c (the Corporation Takeover Bid Disclosure Act). Of these, three contain provisions similar to the provision in PREDFDA that authorizes a governing body to receive service of process in any "noncriminal proceeding" against the person engaged in the prohibited conduct "or his successors which grows *208 out of that conduct." See, e.g., N.J.S.A. 45:15-16.45c; N.J.S.A. 45:22A-19; N.J.S.A. 49:3-73(b).
There is nothing in our courts' experiences with these other acts which would suggest that one who succeeds to the role of the violator after the violation  particularly when both victim and successor are knowledgeable of the violation  can be found liable under the act. It is certainly apparent that the Legislature has enacted provisions essentially identical to N.J.S.A. 45:2A-36c in other disclosure acts. It is unclear, however, as to where  or why  such provisions originated. The earliest appearance of such a provision in New Jersey can be found in New Jersey's Blue Sky Law. Interestingly, New Jersey's Blue Sky Law was enacted in 1967 and was based on the Uniform Securities Law which was drafted in 1956[2]. Though a significant amount of time has passed since the drafting of the Uniform Securities Law and its adoption by most states, no decision can be located which remotely suggests the meaning of the "successor" reference in the service of process provision contained therein. That alone should suffice to discount the expansive view of this statute urged by plaintiffs.
It cannot be readily assumed that the "successor" phrase in N.J.S.A. 45:22A-36c has any substantive content. There is simply no evidence to suggest that this phrase had the meaning attributed to it by plaintiffs when used by our Legislature in adopting PREDFDA or the other Acts previously mentioned. But if the leap is made and it is assumed that the phrase has a meaning greater than that suggested by its context, the most that can be attributed to that phrase was an intent to adopt the common law approach to successor liability. However, even if it is accepted that a "successor" may be a target of a PREDFDA action, would that include a claim such as that asserted against movants for their August 1991 actions?
*209 Generally, it is understood that a transaction between two entities does not give rise to the assumption of liability of the transferor's tortious conduct unless there is an express or implied assumption of liability, a consolidation or merger between the two entities, the purchasing entity is merely a continuation of the seller, or the transaction was entered into fraudulently in order to escape liability. See, McKee v. Harris-Seybold Co., 109 N.J. Super. 555, 561, 264 A.2d 98 (Law Div. 1970), aff'd 118 N.J. Super. 480, 288 A.2d 585 (App.Div. 1972). Plaintiffs have neither pleaded, nor asserted in response to the motion to dismiss, that either the Bank or Riverdale are a successor within any of the traditional exceptions to the general rule of non-liability mentioned in McKee.
And, even if the "successor" reference in N.J.S.A. 45:22A-36c can be interpreted as recognizing and adopting the common law view of successor liability as set forth in McKee, it is certain that the breadth of its reach goes no further than McKee. Any suggestion that N.J.S.A. 45:22A-36c has as long a reach as the common law theory of successor liability first recognized in New Jersey in Ramirez v. Amsted Indus., Inc., 86 N.J. 332, 431 A.2d 811 (1981), is rejected. The first use of the word "successor" in the aforementioned disclosure statutes precedes Ramirez by many years. As noted above, the first use of such a provision by our Legislature appears in New Jersey's Blue Sky Law in 1967 (which adopted the essentially identical version in the original draft of the Uniform Securities Law in 1956). PREDFDA was enacted in 1977 and thus also antedates Ramirez. It cannot be assumed that the Legislature intended to adopt a view of successor liability broader than that recognized at the time PREDFDA was enacted in 1977 unless such a departure was unambiguously expressed. Green v. Auerbach Chevrolet Corp., 248 N.J. Super. 128, 133, 590 A.2d 678 (App.Div. 1991).
There is certainly nothing in any of these statutes which would suggest the Legislature's intent that its use of the word "successor" should include any future changes in the common law's view of successor liability. Thus, it cannot be said that the Legislature *210 intended, when it adopted PREDFDA in 1977, to incorporate the Ramirez holding of our Supreme Court four years later in 1981. Certainly, the wider expansion of Ramirez in Bussell v. DeWalt Prod. Corp., 259 N.J. Super. 499, 614 A.2d 622 (App.Div. 1992), certif. denied 133 N.J. 431, 627 A.2d 1137 (1993), also cannot be included within the purported legislative intent to adopt the common law view of successor liability.
It is also important to note that the phrasing of N.J.S.A. 45:22A-36c is derived from the Uniform Securities Law, a uniform proposal of nationwide interest. See Cola v. Terzano, 129 N.J. Super. 47, 54, 322 A.2d 195 (Law Div. 1974), aff'd sub nom. Cola v. Packer, 156 N.J. Super. 77, 383 A.2d 460 (App.Div. 1977). It is too great a leap of faith to assume that the adoption of a uniform law by our Legislature, without further explanation or amendment, would have carried with it New Jersey's own distinctly unique view[3] of successor liability. By adopting the wording of this *211 uniform law, it can only be assumed that if any form of successor liability is embraced by PREDFDA, it is the majority view and does not include a theory as broad as that announced in Ramirez. To hold otherwise is to ignore the uniform use of this provision nationwide, and accepted in New Jersey at the time of PREDFDA's adoption.
It is apparent that the "successor" reference in N.J.S.A. 45:22A-36c includes only persons or entities which expressly assumed the liabilities and obligations of their predecessors, or those successors whose liability would arise from the traditional concepts of successor liability accepted nationwide and in New Jersey at the time of PREDFDA's adoption. See, McKee, supra. Giving the Second Amended Complaint the benefit of all reasonable inferences, there is nothing to remotely suggest that the liabilities of those who participated in the public offering statement should be imposed upon the Bank or Riverdale under the traditional concepts of successor liability.
Despite the foregoing, it is the court's view that the Legislature could not have intended PREDFDA to embrace the theory asserted by plaintiffs. If the Legislature intended to create such a novel basis for a claim (i.e., a theory which would impose liability on a party under circumstances which, by their very nature, preclude *212 participation in the issuance of the public offering statement in question), one would expect that it could have said so more clearly. With little effort the Legislature could have, if plaintiffs' view is correct, afforded those who might succeed to the interests of the issuer of the public offering statement some notice that, in so succeeding, liability would be assumed. Due process would require at least that much. See, State v. Lee, 96 N.J. 156, 165, 475 A.2d 31 (1984). It is also illogical to assume that if the Legislature intended to create a basis for liability without a causal connection between the conduct prohibited and the actions of the party upon whom liability is to be imposed, it would have done so in such a mysterious, shaded fashion. It is far more reasonable to assume that, in enacting N.J.S.A. 45:22A-36, the Legislature only intended to render a successor an agent of its predecessor for service of process and no more. Accordingly, this legislation cannot be viewed as creating a cause of action against a successor of a developer when that succession occurred after the issuance of the public offering statement and after the purchasers learned of the facts that gave rise to their claims under that statute. For those reasons, the Second Amended Complaint, as to the August 1991 actions of the Bank and Riverdale, fails to state a claim upon which relief may be granted.

B. The Bank's Actions As A Lender
Having disposed of plaintiffs' claim concerning the August 1991 actions of the Bank and Riverdale, this court must now consider plaintiffs' allegation that the Bank's financing of the project prior to, or at the time of, the issuance of the public offering statement renders it liable as a person who "directly or indirectly" controlled a developer who misrepresented a material fact contained in a public offering statement.
Plaintiffs allege that the Bank's position as a lender to the developers renders it a person "directly or indirectly" involved in the development. Plaintiffs, however, have not pointed to any actual involvement in the project, or any actual involvement in the *213 issuance of the public offering statement by the Bank, beyond its participation as a lender. Notwithstanding, plaintiffs argue that defendant's mere position as a lender suffices to defeat the present motion to dismiss and to open the door to discovery that might unearth such involvement. Plaintiffs further assert that the action of the Bank in taking seats on the board of directors demonstrates that the Bank's pre-1988 involvement may have, in actuality, exceeded its role as a lender.
Dealing first with whether the Bank's mere actions as a lender may be actionable, it is noted that there is no case law arising from PREDFDA which would support plaintiffs' contention. Once again, reference to the similarly-worded Blue Sky Act is informative. In Cola v. Terzano, supra, 129 N.J. Super. at 54, 322 A.2d 195, the court concluded that the New Jersey Blue Sky Act imposes liability based "on minimal participation" in a sale. In fact, the court's description of the proper reach of § 12(1) of the Securities Act of 1933 (15 U.S.C. § 77l(1)) in Pinter v. Dahl, 486 U.S. 622, 642-55, 108 S.Ct. 2063, 2076-83, 100 L.Ed.2d 658 (1988) further amplifies the "minimal participation" standard. In Pinter, the Supreme Court of the United States held that the term "seller" is not limited to an owner who passes title or an interest in a security, but also includes a broker or other person "who successfully solicits the purchase, motivated at least in part by a desire to serve his or her own financial interests or those of the securities owner." Id. at 647, 108 S.Ct. at 2078. Zendell v. Newport Oil Corp., 226 N.J. Super. 431, 439-41, 544 A.2d 878 (App.Div. 1988), embraces the Supreme Court's view in Pinter for purposes of New Jersey's Blue Sky Act. In affirming the entry of a summary judgment in favor of a law firm that had provided legal assistance with respect to the sale of unregistered securities, the Zendell court, beside following Pinter, also rejected the argument that the word "seller" encompasses a person "whose participation in the buy-sell transaction is a substantial factor in causing the transaction to take place." Id. at 440, 544 A.2d 878.
*214 This view of the scope of liability under the federal and state securities laws equally applies in defining the scope of liability under PREDFDA. This is true not only because of the similar wording of our Blue Sky Act and PREDFDA, but also because of the similar purpose underlying both acts: to insure honesty, public understanding and trust in the sale of complex interests. See, e.g., N.J.S.A. 45:22A-22. Thus, it must be concluded that liability under PREDFDA extends only to those who participate in the successful solicitation of a unit in a planned real estate development which was "motivated at least in part by a desire to serve his or her own financial interest" or those of the developer.
In this case, it cannot be said that in acting as a lender the Bank did not have a financial interest in the actions of the developer[4]. A financial interest alone, however, is not enough to render one liable; there must be minimal participation in the issuance of the public offering statement. Cola, supra. Nevertheless, given that motions to dismiss are granted sparingly when the arguments are fact-sensitive, the extent of participation by the Bank, however minimal, cannot be definitively assessed. Further discovery may provide clear answers as to whether the Bank can ultimately be held liable as a "control" person.
There is no question that the mere act of lending money to a developer does not give rise to liability under PREDFDA. However, common sense dictates that a Bank's position as a lender raises a potentiality that further control and participation may exist. Granted, there may be a fine line between active participation with the developer, and actual or inferential management and promotion of the development, on the one hand, and actions taken by a lender to maintain or preserve its collateral, on the other. The sharp division of views among the members of the Supreme Court of Ohio regarding the liability of a mortgagee *215 under circumstances similar to those presented here[5] demonstrates the difficulty in attempting to determine on which side of this line the Bank's actions fall. McKnight v. Board of Directors, 32 Ohio St.3d 6, 512 N.E.2d 316 (1987).
Accordingly, this court cannot say, in light of the Bank's earlier involvement in the project as a lender, that plaintiffs have not set forth a claim upon which relief may be granted. It is not inconceivable that a bank providing financing for such a project would have, either directly or indirectly, control over the borrower and the project itself. Whether that occurred in this case is a matter which may be explored in discovery. Thus, the motion to dismiss will be denied.

V

CONCLUSION
In summary, the motion to dismiss will be granted as to the claim that the Bank and Riverdale are liable as "successor developers," and denied insofar as plaintiffs allege that the Bank is liable under PREDFDA as a control person because of actions it may have taken in its capacity as a lender.
NOTES
[1] N.J.S.A. 45:22A-21 to -42.
[2] Compare N.J.S.A. 49:3-73(b) with Uniform Securities Law § 414(h).
[3] Only 3 other states follow the theory expressed in Ramirez: California: Ray v. Alad Corp., 19 Cal.3d 22, 136 Cal. Rptr. 574, 560 P.2d 3 (1977); Washington: Martin v. Abbott Laboratories, 102 Wash.2d 581, 689 P.2d 368 (1984); and Pennsylvania: Dawejko v. Jorgenson Steel Co., 290 Pa.Super. 15, 434 A.2d 106 (1981); but see Conway v. White Trucks, Div. of White Motor Corp., 885 F.2d 90 (3d Cir.1989), while it has been rejected in at least 30 states and territories: Arkansas: Reed v. Armstrong Cork Co., 577 F. Supp. 246 (E.D.Ark. 1983); Colorado: Florom v. Elliott Mfg., 867 F.2d 570 (10th Cir.1989); Delaware: Elmer v. Tenneco Resins, Inc., 698 F. Supp. 535 (D.Del. 1988); District of Columbia: Rivas v. District Int'l Trucks, No. CIV.A. 85-3411-BDP, 1989 WL 117871 (D.D.C. October 5, 1989); Florida: Bernard v. Kee Manufacturing Co., Inc., 409 So.2d 1047 (Fla. 1982); Georgia: Bullington v. Union Tool Corp., 254 Ga. 283, 328 S.E.2d 726 (1985); Illinois: Gonzalez v. Rock Wool Eng'g & Equip. Co., Inc., 117 Ill. App.3d 435, 72 Ill.Dec. 917, 453 N.E.2d 792 (1983); Indiana: Travis v. Harris Corp., 565 F.2d 443 (7th Cir.1977); Iowa: DeLapp v. Xtraman, Inc., 417 N.W.2d 219 (Iowa 1987); Kansas: Stratton v. Garvey Int'l, Inc., 9 Kan. App.2d 254, 676 P.2d 1290 (1984); Kentucky: Conn v. Fales Div. of Mathewson Corp., 835 F.2d 145 (6th Cir.1987); Louisiana: Page v. Gulf Oil Co., 812 F.2d 249 (5th Cir.1987); Maryland: Giraldi v. Sears, Roebuck & Co., 687 F. Supp. 987 (D.Md. 1988); Massachusetts: Guzman v. MRM/Elgin, 409 Mass. 563, 567 N.E.2d 929 (1991); Michigan: Pelc v. Bendix Machine Tool Corp., 111 Mich. App. 343, 314 N.W.2d 614 (1981); Minnesota: Niccum v. Hydra Tool Corp., 438 N.W.2d 96 (Minn. 1989); Missouri: Young v. Fulton Iron Works Co., 709 S.W.2d 927 (Mo. Ct. App. 1986); Nebraska: Jones v. Johnson Mach. & Press Co., 211 Neb. 724, 320 N.W.2d 481 (1982); New Hampshire: Simoneau v. South Bend Lathe, Inc., 130 N.H. 466, 543 A.2d 407 (1988); New York: Schumacher v. Richard Shear Co., Inc., 59 N.Y.2d 239, 464 N.Y.S.2d 437, 451 N.E.2d 195 (1983); North Dakota: Down-towner, Inc. v. Acromental Prod., Inc., 347 N.W.2d 118 (N.D. 1984); Ohio: Flaugher v. Cone Automatic Mach. Co., 30 Ohio St.3d 60, 507 N.E.2d 331 (1987); Oklahoma: Goucher v. Parmac, Inc., 694 P.2d 953 (Okla. Ct. App. 1985); Oregon: Western Helicopter Serv. Inc. v. Rogerson Aircraft Corp., 728 F. Supp. 1506 (D.Or. 1990); South Dakota: Hamaker v. Kenwel-Jackson Mach., Inc., 387 N.W.2d 515 (S.D. 1986); Texas: Griggs v. Capitol Mach. Works, 690 S.W.2d 287 (Tex. Ct. App.), writ refused 701 S.W.2d 238 (1985); Vermont: Ostrowski v. Hydra-Tool Corp., 144 Vt. 305, 479 A.2d 126 (1984); Virginia: Harris v. T.I., Inc., 413 S.E.2d 605 (Va.Sup.Ct. 1992); Crawford Harbor Assoc. v. Blake Const. Co., Inc., 661 F. Supp. 880 (E D.Va. 1987); Virgin Islands: Polius v. Clark Equip. Co., 802 F.2d 75 (3d Cir.1986); Wisconsin: Fish v. Amsted Indus., Inc., 126 Wis.2d 293, 376 N.W.2d 820 (1985).
[4] In Zendell, the court reasoned that "the law firm had no managerial position with or financial investment in" the securities that were sold. 226 N.J. Super. at 441, 544 A.2d 878.
[5] Compare R.C. 5311.01(T) (Ohio) with N.J.S.A. 45:22A-37b.