**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2043-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DEVONTAE MILLS,

     Defendant-Appellant.

_____

Argued October 8, 2024 – Decided December 5, 2024

Before Judges Susswein and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 22-06-0299.

Susan L. Romeo, Assistant Deputy Public Defender argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Susan L. Romeo, of counsel and on the brief).

Catlin A. Davis, Assistant Prosecutor, argued the cause for respondent (John P. McDonald, Somerset County Prosecutor, attorney; Catlin A. Davis, of counsel and on the brief).

PER CURIAM

Defendant Davontae Mills appeals from a Law Division order denying his motion to suppress a handgun and large capacity magazine seized from his motor vehicle after a traffic stop. After reviewing the record and applicable legal principles, we reverse and remand for further proceedings.

I.

In June 2022, a Somerset County Grand Jury returned two indictments, charging defendant with four crimes arising from his unlawful possession of a handgun during a traffic stop. In the first indictment defendant was charged with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(4); and fourth-degree possession of a large-capacity ammunition magazine, N.J.S.A. 2C:39-3(j). In the second indictment, defendant was charged with second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1).

Thereafter, defendant filed a motion to suppress the evidence seized comprising of the handgun and magazine. The trial court held a testimonial hearing on the motion. In a written decision, the court denied defendant's motion and entered a corresponding order.

A-2043-22

In January 2023, defendant pled guilty to all three counts of the indictment, and to a violation of his probationary term on a separate accusation. In exchange for defendant's guilty plea, the State agreed to recommend the dismissal of the second-degree certain persons not to have a weapon charge, and the four motor-vehicle tickets arising from the same incident. The State also agreed to recommend defendant receive an aggregate seven-year prison sentence with a mandatory forty-two-month parole disqualifier required by the Graves Act, N.J.S.A. 2C:43-6(c).

In March 2023, the court sentenced defendant in accordance with the parties' negotiated plea agreement.

II.

The following facts were developed at the suppression hearing. The incident giving rise to this appeal occurred on March 23, 2022, when Green Brook Township Police Officer Christian Paez initiated a motor vehicle stop on the shoulder of Route 22 in Green Brook Township because defendant was using his cell phone while driving. Defendant told Officer Paez that he did not have a driver's license, insurance or the vehicle's registration with him, and that the vehicle belonged to his girlfriend who had the registration. Defendant also said he had a suspended driver's license that listed a New York address, and the

3

vehicle's registration was with his girlfriend because it was her vehicle. At the time, defendant's vehicle and the police vehicles were pulled over on the shoulder of the roadway "[c]lose to ongoing traffic." Shortly after the stop, Officer Paez told defendant: "[S]omeone's going to have to come pick you up anyway. You're not going to be able to drive the car. So, someone will have to come here to drive the car eventually once we get to that."

Patrol Officer Gary Maurer and Sergeant Victor[1] arrived at the scene as back-up. After Officer Paez asked defendant for identification, he provided him with the false name, Christian Mills, and a false date of birth. Officer Maurer removed defendant from the car and questioned him as to whether he possessed any identification in the car or at home. Defendant informed the officers he had no identification with him, no wallet, no debit card and no driver's license.

Defendant remained in the front seat of the car, making phone calls while the officer's attempted to identify him. Shortly thereafter, the officers received a photograph from which they concluded the driver was Devontae Mills. The dispatcher informed Officer Paez there were bench warrants issued for defendant based on a violation of probation for possession of a weapon without

---

[1] We intend no disrespect as the record did not contain Sergeant Victor's first name.

A-2043-22

a permit and for failure to appear in municipal court on a disorderly persons charge of simple assault.

Defendant was removed from the car and arrested. Officer Paez testified he saw a "gray man purse or satchel" on the driver's side seat to the immediate left of where defendant was seated when defendant opened the driver's side door to exit the car. Officer Paez handcuffed defendant on the shoulder of Route 22 behind the car. His search of defendant's person revealed "Nothing illegal."

While Officer Paez was handcuffing defendant, Officer Maurer walked to the open driver's side door. The mobile video recorder (MVR) depicted Officer Maurer standing between the door and the front seat. He then asked Sergeant Victor "do you want a tow for this?" Sergeant Victor stated they would tow it, but defendant interjected: "Park it. Park it." Sergeant Victor immediately responded, "Alright, are we going to be cool then? Alright, what's up?"

Officer Mauer testified he approached the driver's side door to close it since the vehicle was on a busy roadway. He then saw the gray satchel next to the driver's side seat, resting on the door frame. Believing the satchel was defendant's personal property, he picked it up to bring it to the police station. The MVR shows Officer Maurer leaned down into the car and stood up with a satchel bag in his left hand. Officer Maurer pointed to the bag and asked

5

defendant if it was his. Defendant acknowledged that it was, and Officer Maurer walked away from the car with the bag.

Officer Paez told defendant that they knew his real name and that if he talked to them, they would be more cooperative with him. In the MVR Officer Maurer can then be heard again asking defendant if he had "ID," and then he said "[w]e got a gun." Officer Maurer had removed and opened the satchel from the car and found a gun and large capacity magazine inside it. Thereafter, Officer Paez asked Sergeant Victor what they were going to do with the car, and Sergeant Victor responded that they would impound it.

Officer Maurer testified he went inside the car to take the satchel. He "grabbed it and felt a gun in the bag." Officer Maurer testified that he would have "100 percent" taken the satchel from the car, whether or not a decision had been made to impound the car at that point. He testified he took the satchel because "[w]e like to give anyone their personal property back before a car is taken or even secured like just to make sure they have their belongings when they come back to headquarters." Officer Maurer acknowledged that defendant had not asked him to obtain his personal property, but also testified "[w]henever anyone's arrested we try to get any of their belongings, any purse, wallet, phone,

A-2043-22

anything to that effect, anything that would personally help them." The officer further explained:

> Just to make sure they have their property . . . wherever they're going or to get their vehicle out or make phone calls or have their wallet, their I.D., all the stuff they need to move on with their day to hopefully get their vehicle out sooner rather than later and going back to the yard to get it.

Officer Paez testified that because defendant had "had over 20 minutes and he made multiple phone calls" while in the car, "I would assume he did call someone because someone showed up." When asked on cross-examination if he "explicitly [told defendant] you're going to have to call somebody to pick up the car, he answered "I did not say those exact words."

As shown on another MVR, Sergeant Victor searched the bag at the scene and removed the gun. Shortly thereafter, while handcuffed in the back of Officer Paez's patrol car, defendant consented to a search of the car. Two officers then searched the entire car, opening the doors and the trunk, all while it remained on the shoulder of Route 22.

After the hearing, the court rendered a written decision. The court denied defendant's motion to suppress the evidence obtained from the satchel. The court found the stop was justified because Officer Paez saw defendant using his cell phone while driving. The court found Officer Paez also was justified in

arresting defendant because defendant had outstanding warrants and no driver's license.

The court found the car had been lawfully impounded because it was stopped on a busy highway and leaving it "unaccompanied could have constituted a danger" to the public and other drivers. The court found that defendant had not been "permitted to arrange for others to remove the vehicle" but "upon learning that the vehicle was going to be towed," he "did not ask . . . the officers to call someone, such as his girlfriend, to come and remove the vehicle."

The court also found the "inspection" of the car "which le[d] to the discovery of the gun in the defendant's satchel, [also] falls within the community caretaking exception to the warrant requirement." The court determined Officer Maurer was in the process of securing the defendant's belongings "and preventing any potential danger or crime that could have occurred." The court also found "the satchel that contained the gun was located near an open driver's side door that was protruding dangerously into traffic." The court concluded that Officer Maurer felt the gun only after he had removed the satchel from the car, and his training and experience led him to recognize that there was a gun

8

within the bag, providing probable cause to search the bag. An order was entered denying defendant's motion.

On appeal, defendant asserts the following points:

POINT I

THE COURT ERRED WHEN IT DENIED DEFENDANT'S SUPPRESSION MOTION BECAUSE THERE WAS NO ACTUAL OR LAWFUL IMPOUNDMENT OF THE CAR, NO ACTUAL OR LAWFUL INVENTORY SEARCH, AND NO EMERGENCY THAT REQUIRED THE POLICE TO SEARCH THE CAR AND REMOVE THE CLOSED, OPAQUE GREY SATCHEL.

POINT II

THE SEVEN-YEAR SENTENCE FOR WEAPONS POSSESSION WAS EXCESSIVE WHERE THIS WAS DEFENDANT'S SECOND INDICTABLE CONVICTION AND BOTH CONVICTIONS WERE FOR NON-VIOLENT OFFENSES.

III.

Our standard of review of a trial court's factual findings in the context of deciding a motion to suppress evidence in a criminal case is well-settled. We are bound to uphold the factual findings, provided those findings are "supported by sufficient credible evidence in the record." State v. Scriven, 226 N.J. 20, 40 (2016). We may reject the judge's findings "only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v.

9

Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).  However, we review de novo the judge's legal conclusions.  State v. Watts, 223 N.J. 503, 516 (2015).

"[T]he State bears  the burden of proving by  a  preponderance  of  the evidence that a warrantless search or seizure falls within one of the few well-delineated exceptions to the warrant requirement."  State v. Goldsmith, 251 N.J. 384, 399 (2022).

IV.

Initially, we note the parties do not challenge the court's findings that the defendant was stopped for valid reasons for use of a cell phone while operating a motor vehicle and was validly arrested based on the existing warrants in effect.

We now address defendant's argument the car was not lawfully impounded and even if it was, the seizure of the bag was not part of a lawful inventory search.  The State relies upon State v. Hummel, 232 N.J. 196 (2016) arguing the "impoundment" of the satchel was valid to (1) protect the property while the detainee is in police custody, (2) shield "the police and storage bailees from false property claims," and (3) safeguard "the police from potential danger." Hummel, 232 N.J. at 208.  We note the trial court's decision did not specifically

address this argument offered by the State in its trial court submission which now it submits as its principal point on appeal.

We are unpersuaded by the State's position. Established principles guide our review.

> "[T]he propriety of an inventory search involves a two-step inquiry: (1) whether the impoundment of the property is justified; and (2) whether the inventory procedure was legal." Hummel, 232 N.J. at 208, 179 A.3d 366 (citing State v. Mangold, 82 N.J. 575, 583 (1979)). Factors relevant to determining the reasonableness of the search include "the scope of the search, the procedure used, and the availability of less intrusive alternatives." Mangold, 82 N.J. at 584. No one factor is dispositive, and each factor should be balanced against the others. Hummel, 232 N.J. at 208-09, 179 A.3d 366. Assessing "whether law enforcement conducted the search pursuant to routine police procedures is essential" and "[s]earches conducted at variance with or in the absence of standardized practices are unlikely to satisfy the inventory-search warrant exception." Id. at 210, 179 A.3d 366.
>
> [State v. Vanderee, 276 N.J. Super. 214, 234-235 (2023)]

[T]he entire purpose of the inventory search exception is based upon the need to safeguard the owner's property while it is in police custody. State v. One 1994 Ford Thunderbird, 349 N.J. Super. 352, 368 (App. Div. 2002).

The State argues that the officers conducted a lawful inventory search when obtaining the satchel because defendant was under arrest at the time of its

seizure, and they determined it was the personal property of defendant. The portion of Hummel cited by the State outlining the three prongs justifying "impoundment" of the satchel is immediately preceded by the following:

> One narrow exception to the Fourth Amendment warrant requirement is the inventory search. See Colorado v. Bertine, 479 U.S. 367, 371 (1987); Illinois v. Lafayette, 462 U.S. 640, 643-48 (1983); State v. Mangold, 82 N.J. 575 (1980). An "inventory search is not an independent legal concept but rather an incidental administrative step following arrest and preceding incarceration." Lafayette, 462 U.S. at 644. [] Police may search an arrestee without a warrant and inventory the property in the arrestee's possession before he or she is jailed. Id. at 646; accord State v. Paturzzio, 292 N.J. Super. 542, 550 (App. Div. 1996).
>
> [Hummel, 232 N.J. at 207-208 (emphasis added).]

We conclude the seizure of the bag does not fall under the inventory and impoundment exception to the warrant requirement. The satchel was clearly located in the vehicle and was not in the defendant's possession. Therefore, we reject the State's argument relying upon the cited portion of Hummel applicable to the exception of inventory searches for property in an arrestee's possession.[2] We determine this exception does not apply to the search of defendant's car.

---

[2] The State does not contend the search falls under the search-incident-to-arrest exception.

We now turn to the trial court's finding there was a valid impoundment and inventory search of the defendant's vehicle because the impoundment and search were reasonable since the vehicle was on a busy highway and posed a danger to the officers and the public.

We apply the same two-step process previously set forth when considering the reasonableness of an impoundment and inventory search of a motor vehicle. On such occasions, if the

> driver, even though arrested, is able to make his own arrangements for its custody, or if the vehicle can be conveniently parked and locked without constituting an obstruction of traffic or other public danger, the police should permit that action to be taken rather than impound it against the will of the driver and thereafter search it routinely.
>
> [State v. Slockbower, 79 N.J. 1, 9 (1978).]

The record clearly shows the police had not impounded the vehicle prior to the seizure of the satchel. The MVR clearly depicts the conversation between Officer Paez and Sergeant Victor to impound the vehicle was after the satchel was seized. Importantly, moreover, the court found "defendant was not permitted to arrange for others to remove the vehicle." At the suppression hearing, Officer Paez testified because defendant had "had over 20 minutes and he made multiple phone calls" while in the car, "I would assume he did call

13

someone because someone showed up." When confronted on cross-examination if he "explicitly [told defendant] you're going to have to call somebody to pick up the car", he admitted, "I did not say those exact words." The record also demonstrates defendant did not consent to the impoundment because he objected to Sergeant Victor telling him they would be towing his vehicle because he responded "Park it. Park it."

We agree with the trial court that the officers did not offer a reasonable alternative method for defendant to move the vehicle prior to its impoundment. We also conclude, like the circumstances in Slockbower, the satchel containing the gun and magazine was seized prior to any determination to impound the vehicle. Under these circumstances the inventory search which discovered the weapon and magazine was invalid.

V.

We now address the trial court's determination that the warrantless seizure of the satchel was permitted under the community caretaking function. Our Supreme Court has recognized that "police officers acting in a community-caretaking capacity 'provide "a wide range of social services" outside of their traditional law enforcement and criminal investigatory roles.'" State v. Vargas, 213 N.J. 301, 323 (2013) (quoting State v. Edmonds, 211 N.J. 117, 141 (2012)).

The Court has "developed several exceptions to the general rule that a warrant based on probable cause must be issued prior to any search or seizure. Among these exceptions [is when law enforcement is] . . . performing a community caretaking function." State v. Harris, 211 N.J. 566, 581 (2012) citing State v. Bogan, 200 N.J. 61 (2009). Although our Court has narrowed its applicability regarding searches of homes, e.g., Vargas, 213 N.J. at 305; Edmonds, 211 N.J. at 143, the Court has applied the community caretaking doctrine to automobile searches, e.g., State v. Diloreto, 180 N.J. 264, 277, 280-81 (2004); Mangold, 82 N.J. at 585.

The community caretaking doctrine does not require "'that the police demonstrate probable cause or an articulable suspicion to believe that evidence of a crime will be found.'" Diloreto, 180 N.J. at 276 (quoting Byrnes, New Jersey Arrest, Search and Seizure § 14:1-1, at 289 (2003)). Instead, "[w]hen courts review those forms of citizen-police encounters they 'employ a standard of reasonableness to determine the lawfulness of police conduct.'" Ibid. (quoting Byrnes, § 14:1-1, at 289). Our Court has recognized that "community caretaking functions [are] totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. State v. Bogan, 200 N.J. 61, 73-74 (2009).

We conclude the court's reliance on the community caretaking function exception was a misapplication of this principle. We have already rejected the State's argument that Officer Maurer was justified in taking the satchel from the automobile as part of an inventory search. Officer Maurer testified he took the satchel from the automobile "to make sure they have their property . . . to make phone calls or have their wallet, their I.D., all the stuff they need to move on with their day to hopefully get their vehicle out sooner rather than later and going back to the yard to get it." Based on this testimony the court found Officer Maurer's actions of "securing the defendant's belongings and preventing potential danger or crime which could occur [and that] the satchel containing the gun was near an open . . . door that was protruding dangerously into traffic" was part of his duties under the community caretaking function.

We determine the department's policy, as applied to the factual circumstances before us, would result in a blanket exception for a warrantless search of a motor vehicle. The policy would permit law enforcement to seize any "personal items" of the arrestee, including items not on the arrestee's possession. We conclude the department's policy supporting the taking of the satchel from the vehicle in this instance was unreasonable and was not part of the community caretaking function.

16

In addition, although we determine the court's finding that the car door was "dangerously protruding into traffic" was based on sufficient evidence in the record, the State has not provided adequate reasons to remove the satchel from the vehicle rather than merely closing the car door, impounding the car and later performing a valid inventory search.

## VI.

We turn finally to the State's argument raised for the first time on appeal that even if no exception for the warrantless search existed, the satchel and gun would have been discovered under the inevitable discovery doctrine once the vehicle was impounded and processed. To invoke the doctrine, the State must clearly and convincingly show the evidence obtained from the illegal police activity would have been discovered independent of a constitutional violation. State v. Sugar (III), 108 N.J. 151, 157 (1987); see also Nix v. Williams, 467 U.S. 431, 443 (1984). Under this exception to the exclusionary rule, the State must prove that (1) proper investigatory procedures would have been followed; (2) those methods would have inevitably resulted in the discovery of the evidence; and (3) the discovery would have occurred independent of the unlawful seizure. Sugar (III), 108 N.J. at 156-57.

After our review of the record, we are satisfied the inevitable discovery doctrine does not justify the warrantless search of defendant's vehicle because the State failed to provide foundational testimony or other evidence at the hearing establishing the department procedures which would have been utilized after the impoundment of the vehicle and that these investigative procedures would have resulted in discovery of the gun and magazine. Therefore, we determine the prongs required under State v. Sugar (III) were not met.

Because we hold the evidence should have been suppressed, defendant's sentencing argument is moot.

Reversed and remanded. The trial court order is vacated, and we direct the trial court to enter an order granting defendant's motion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2043-22