186 N.J. Super. 209 (1982)
452 A.2d 209
RUTH S. FEHNEL, PLAINTIFF-APPELLANT,
v.
RICHARD B. FEHNEL, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 20, 1982.
Decided May 5, 1982.
*210 Before Judges MATTHEWS, PRESSLER and PETRELLA.
Patricia E. Rousseau, Rutgers Urban Legal Clinic, for appellant.
Arthur H. Miniman for respondent.
The opinion of the court was delivered by PRESSLER, J.A.D.
Upon the denial of her motion for an adjournment made on the scheduled trial date of this divorce and custody action, plaintiff-wife Ruth S. Fehnel moved for an order of voluntary dismissal without prejudice. The motion was granted subject to the condition that she pay defendant-husband Richard B. Fehnel a counsel fee in the amount of $2,000 and that she be barred from reinstitution of the action until the making of such payment. She appeals from the imposition of these conditions. We reverse because we are persuaded that the denial of the adjournment motion which precipitated the dismissal constituted a mistaken exercise of discretion under the circumstances.
Insofar as we are able to reconstruct from the regrettably sparse record before us, the parties were married in 1958 and had four sons, the eldest of whom is now emancipated. The three minor sons are now 11, 13 and almost 18. Plaintiff first sued for divorce by a complaint filed in 1977 alleging defendant's extreme cruelty. The parties thereafter reconciled and the action was dismissed by the judge pursuant to R. 1:13-7 on his own motion and without prejudice for failure to prosecute. The reconciliation unfortunately did not succeed and plaintiff instituted *211 this action for divorce on essentially the same grounds as previously pleaded by a complaint filed on November 30, 1979. Defendant, still apparently desirous of saving the marriage, filed his answer in February 1980, denying the allegations of cruelty and asking that the complaint be dismissed. He sought no affirmative relief.
At the time the second complaint was filed plaintiff was a third-year student at Drew University in Madison, New Jersey, having returned to school some 20 years after her marriage. Because of the domestic difficulties, she had obtained living accommodations on campus but apparently returned home daily to visit with and supervise the children.
In February 1980 plaintiff filed a motion for pendente lite relief seeking support and maintenance for herself and the children in both general and specific terms. Among her specific requests was defendant's assistance in paying the loans she had taken for her tuition and in providing psychological counselling for the children. It appears that financial problems, or at least the parties' variant views regarding the family finances, were a major source of conflict between them. Defendant's response to this motion was to make a cross-motion for pendente lite custody of the children, the first suggestion that the question of custody was in dispute. The motions were apparently determined on the certifications without oral argument. Hence, we have no transcript advising us of the reasons for their ultimate disposition, and if there was a letter decision explaining those reasons, we have not been made aware of it. In any event, an order was entered in April 1980 denying pendente lite support, denying the application for tuition assistance, requiring the husband to continue to pay the expenses for maintaining the marital residence and for various health and life insurances, awarding him pendente lite custody and appointing one John White, M.S.W., a family therapist, to evaluate the children at defendant's expense and to advise the court as to the children's need for counselling.
*212 Following the entry of this order plaintiff resumed her residence in the marital home. White also wrote to the court advising that all three boys were upset over the marital difficulties, were attached to both parents, were probably ambivalent in their feelings and needed professional help because of their "inability to cope with the trauma in which they are currently involved." The record does not indicate whether any professional help was afforded.
Nothing further in terms of the record appears to have occurred until October 20, 1980, just short of 11 months after the complaint was filed. On that date the parties appeared for a scheduled trial and engaged in several conferences with the "assignment" judge of the matrimonial court. Insofar as we can determine in view of the fact that there is no record notation of what transpired at these conferences, it appears that the parties then realized that their assumption that there would be joint custody of the children following the divorce could not be realized because of their disagreement as to how the children's financial support would be managed. The marital assignment judge then rescheduled the trial for the following week, October 27, 1980, before another trial judge.
The parties appeared before the trial judge on the scheduled date. Again there is no record notation of what exactly transpired since it appears that whatever did transpire took place in chambers without recording. As best as we can reconstruct, the wife's attorney advised the trial judge that although custody had not been contested by pleading and that although joint custody had been anticipated by the parties, it now appeared that it had become a serious and paramount issue in the litigation. Since there had been no probation investigation as required by R. 4:79-8(a), no psychiatric or psychological testing and evaluation of all family members and no arrangements made for expert testimony on these issues, she requested an adjournment in order that these steps might be undertaken. It appears that the trial judge then consulted with the matrimonial assignment judge, who advised that in lieu of an adjournment *213 White be requested to come to the courthouse to conduct interviews with the family members there. It further appears that neither counsel then objected to these interviews. Accordingly, on the following day, October 28, 1980, White did appear at the courthouse where, it is represented to us, he spoke to each child for about 20 minutes and to each of the parties for about an hour. It then appears that he met in chambers with the trial judge and counsel and recommended that unless the parties could agree on a joint custody arrangement, it was his opinion that custody should be awarded to the husband. Since it does not appear that that conference was recorded either, we do not know upon what factual bases and evaluation thereof, if any, White's recommendations were predicated. Nor do we know the precise purpose of that in-chambers report by White, whether in aid of settlement or discovery. It obviously could not have been testimonial. In any event, that chambers conference and the attorneys' report thereof to their respective clients apparently concluded that court day.
On the following day, October 29, the parties again appeared before the trial judge, presumably to proceed with trial. Another settlement conference then held at his request failed, and the trial was ordered to commence. At that point plaintiff's attorney made the same adjournment request she had made two days earlier. That motion was apparently the first proceeding in this entire action conducted in open court, and the transcript thereof is the only transcript before us.
It was counsel's position that since custody now appeared to be a genuinely contested issue, fundamental fairness to her client as well as the ultimate best interests of the children dictated the opportunity to have psychological or psychiatric evaluations made in an appropriate environment and the further opportunity to have the benefit of expert testimony based thereon. Anent White, counsel further argued that since the court would apparently be giving his recommendations considerable weight, she was at the least entitled to have them reduced to written form prior to trial and an opportunity appropriately *214 to meet them. And counsel again pointed out the absence of the required probation investigation.
The trial judge, in denying the adjournment, concluded that "the time for this litigation is at hand and I'm assigned the case." He noted the pendency of the case for 11 months, the number of conferences held and the failure of counsel theretofore to have obtained their own expert evaluations and to have made their own forensic arrangements. He was of the further view that White's interviews and his own interviewing of the children would provide an adequate basis for protecting their interests. Believing, however, that proceeding to trial on the custody issue under these circumstances would substantially prejudice both the mother's and the children's interests, plaintiff's counsel moved for a dismissal of the action without prejudice. That motion was granted subject to the conditions here appealed from.
We are satisfied that if the adjournment motion were properly denied, there was no impediment to the imposition of the condition of payment of a counsel fee upon reinstitution of the action. R. 4:37-1(b). And see Union Carbide Corp. v. Litton Prec. Prods., Inc., 94 N.J. Super. 315, 317 (Ch.Div. 1967). Recognizing, further, the broad latitude of discretion afforded the trial judge in deciding adjournment applications, we are nevertheless constrained to conclude that the denial of the application here constituted a mistaken exercise of discretion under all the circumstances and hence that the conditions imposed upon the responsive request for a dismissal without prejudice cannot be sustained.
Insofar as appears from the record before us, under the circumstances here the single benefit likely to be obtained from the denial of the adjournment motion was in terms of calendar clearance. One more pending case would have been disposed of. We, of course, do not intend to deprecate the legitimate and *215 serious concerns engendered by calendar backlogs and protracted dispositions. These are the concerns which have been encapsulated by the axiom that justice delayed is justice denied. Undoubtedly, avoidance of delay itself and consequent avoidance of the impact of delay upon the quality of justice are paramount obligations of judicial administration. But just as surely as the denial of justice may result from its delay so may justice prematurely dispensed constitute a denial of justice both to the litigants and those irrevocably affected by the outcome of the litigation. Thus, it is also a paramount judicial obligation to resist calendar pressures in specific cases in which yielding to them is likely to prejudice substantial rights.
We are satisfied that this disputed child custody action was such a case. There are obviously few judicial tasks which involve the application of greater sensitivity, delicacy and discretion than the adjudication of child custody disputes, which result in greater impact on the lives of those affected by the adjudication, and which require a higher degree of attention to the properly considered views of professionals in other disciplines. That is why a probation department investigation and report is mandated by R. 4:79-8(a). That is also why the parties must be afforded every reasonable opportunity to introduce expert witnesses whose evaluation of the family situation may assist the judge in determining what is best for the children. There have been frequent doubts expressed regarding the viability of the traditional adversarial process as an appropriate dispute resolution technique in child custody cases. But as long as we continue to resort to that process, it must be permitted to function consistently with its highest potentials.
In our view, forcing the trial here to proceed under the circumstances then obtaining clearly conflicted with these desiderata. We appreciate that counsel may have been dilatory in properly preparing for trial. Potentially penalizing the children as a sanction for the dilatory conduct of the parent-litigants is, *216 however, an unacceptable sanction. Moreover, as the case developed during the pretrial stage, the neglect, if any, of plaintiff's attorney, who sought the adjournment, appears to have been excusable. Defendant had never amended his complaint to demand custody. The probation department's involvement was, therefore, never invoked. Nor did the pendente lite custody order necessarily signal a genuine custody dispute. At the time of the defendant's cross-motion the wife was living in college-campus accommodations relatively near the home and seeing the children regularly and frequently. The continued residence of the children in the marital home, therefore, appeared to be sensible, and we assume that the inappropriateness, both financially and socially, of plaintiff's physical custody of the children at that time and under those circumstances is what motivated the order. Her return to the marital residence in April 1980 may well, however, have mooted not only the import of the pendente lite order but its rationale as well. We further point out what appears to have been the parties' own overly sanguine confidence of their ability to work out a joint custody arrangement satisfactory to and workable for the entire family. Thus, it was not apparently until trial that the unavoidable existence of a genuine dispute became clear.
Nor do we believe that the court's summoning of White to the courthouse to interview the family members adequately responded to the absence of a probation investigation and the denial of an opportunity for counsel to consult with their own experts. Neither the timing nor the place would appear to have contributed to an atmosphere properly conducive to that endeavor. The judge, moreover, apparently intended to consider White's evaluation in his ultimate decision, there being no other possible purpose for White's judicially invited involvement. As a matter of fundamental fairness counsel should have been afforded a reasonable opportunity to meet White's evaluation by, minimally, having it reduced to writing, being afforded the *217 opportunity to review it with an expert and being afforded the further opportunity to introduce countering expert proofs.
In view of the foregoing it appears to us that a proper balancing of legitimately competing demands could easily have been achieved by a short adjournment which would not substantially have impinged upon calendar concerns and would at the same time have afforded a full measure of procedural as well as substantive protection for the litigants and their children. Counsel's dismissal of the action rather than being forced to try it under the circumstances was not unreasonable. Moreover, when an action is recorded as disposed of by a dismissal but in actuality it is dismissed only to be brought again, there is no net gain in terms of judicial economy except in the statistical sense. Rather, the dismissal in those circumstances represents a net loss to both the litigants and the judicial system which is not reasonably necessary or justifiable on any basis.
We have, heretofore, referred to the sparseness of the record resultant from the off-the-record procedures here employed. Initially, we note that our view of this case might be different if we were privy to the import and substance thereof. There may have been stipulations or concessions or representations made or discussions entered into which might place some different gloss on these pretrial events and affect our perception thereof. While we have no recourse but to deal with the record as it comes to us, we remind counsel and the trial judge of their joint and mutual obligation to make a record and to request and provide for record notation of events occurring in chambers. Depending on the nature of those events, they should be either transcribed or summarized so that, among other purposes which such record preservation fulfills, a reviewing court will also have the benefit thereof.
The condition of the order here appealed from relating to counsel fees is reversed.