770 A.2d 1185

JOSEPH O'LOUGHLIN, CAROL O'LOUGHLIN, ADA DOROTHY HAYES, M.D., DONALD MCADAMS, PLAINTIFFS–APPELLANTS, AND BOARDWALK ON THE BAY CONDOMINIUM ASSOCIATION, INC. AND THIRTY–O–SEVEN BAYSHORE CONDOMINIUM ASSOCIATION, INC., PLAINTIFFS, v. NATIONAL COMMUNITY BANK, DEFENDANT/THIRD–PARTY PLAINTIFF–RESPONDENT, AND CHARLES STANFA, ANDREW SIMPSON, GEORGE MAUL, BOARDWALK ON THE BAY ASSOCIATION, INC., A NEW JERSEY CORPORATION, DEFENDANTS, AND ARTHUR PETRELLA, THIRD–PARTY DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted February 28, 2001—Decided March 29, 2001.

594

595

596

Before Judges BAIME, CARCHMAN and LINTNER.

*Mairone, Biel, Zlotnick & Feinberg,* attorneys for appellants Joseph O'Loughlin, Carol O'Loughlin, Ada Dorothy Hayes, M.D., and Donald McAdams (*Norman L. Zlotnick* and *Jeffrey H. Sutherland,* on the brief).

*Cooper, Perskie, April, Niedelman, Wagenheim & Levenson,* attorneys for respondent National Community Bank (*Rona Z. Kaplan,* of counsel; *Michael Gross,* on the brief).

*Reynolds, Drake & Blumberg,* attorneys for respondent Arthur Petrella (*Thomas B. Reynolds,* on the brief).

The opinion of the court was delivered by

LINTNER, J.A.D.

Plaintiffs' complaint, filed on June 7, 1999, was dismissed as barred by the statute of limitations. Plaintiffs' action, which had originally been filed on June 3, 1992, was dismissed without

prejudice in accordance with a consent order dated February 16, 1999, by which defendants agreed to waive the statute of limitations, as long as plaintiffs filed a "New Action" within fifteen days of the execution of the consent order. Prior to entering the consent order, partial summary judgment had been granted in favor of defendant National Community Bank (the Bank), by order of November 30, 1998. Plaintiffs' motion for reconsideration was heard and denied on December 18, 1998, and subsequently memorialized in an order dated February 16, 1999. On September 10, 1999, an order was entered dismissing plaintiffs' new action based upon the running of the Statute of limitations. Plaintiffs appeal from the orders entering partial summary judgment, denying reconsideration, and barring their new action based upon the running of the statute of limitations. We affirm.

Because they are entwined, we combine the procedural history and relevant facts. The subject of this appeal involves three condominium units that are part of a twenty-four unit, three-story, residential building in Brigantine, which was formerly known as Bay Condominium and was built and sold to plaintiffs by defendant Boardwalk on the Bay Association, Inc. and its principals, Charles Stanfa, Andrew Simpson, and George Maul (the Developer).[1] The construction began on the condominium project in 1988, after the Developer obtained a $3,000,000 loan from the Bank, which was secured by a mortgage on the property. Construction was completed sometime in 1989. Plaintiff Donald McAdams paid $187,000 for unit 24 in September 1989. Unit 8 was purchased by plaintiffs Joseph O'Loughlin and his wife Carol in December 1989, for $160,000. Plaintiff Dr. Ada Dorothy Hayes purchased her unit, number 16, in January 1990, for $175,000. Shortly after the purchases, the plaintiffs began to have problems with water intrusion.

---

[1] The condominium association is now known as Thirty–O–Seven Bayshore Condominium Association, Inc.

Four additional units were sold to others and one unit was repurchased by the Developer before it defaulted on its loan. On June 5, 1991, the Bank accepted a deed in lieu of foreclosure to the Developer's single unit and the sixteen unsold units, resolving its mortgage default dispute with the Developer. The Bank performed what it considered cosmetic repairs on the remaining units in order to prepare them for sale. On August 25, 1991, the Bank held an auction at which the remaining units were sold for prices ranging from $80,000 $90,000. Prior to the auction, the Bank filed an amendment to the Condominium Public Offering Statement, indicating that it was replacing Boardwalk on the Bay Association as sponsor. The amendment provided in pertinent part:

> National Community Bank of New Jersey has become the Sponsor of this condominium project by receiving a deed in lieu of foreclosure for sixteen of the units unsold by the original sponsor, Boardwalk on the Bay Associates, Inc. Eight (8) out of the total of twenty-four (24) units were sold by the original sponsor. The remaining sixteen (16) units (and one of the units sold by the original sponsor and conveyed by the original purchaser to the Bank pursuant to a deed in lieu of foreclosure) will be sold at an auction to be conducted by Traiman Corporation, a real estate auction organization. The terms and conditions of the sale are set forth in an Agreement of Sale, which has been approved by the New Jersey Department of Community Affairs.

On September 12, 1991, plaintiffs, through their former attorney, forwarded to the Bank a report of an inspection performed on their behalf by architect Thomas Sidrane. The report found twenty alleged code violations, enumerated seven additional suspected violations that could not be seen without uncovering the work, thirty-three construction defects, and pointed out three additional defective areas where remedial work was necessary in order to address the problems with water infiltration. He concluded the following:

> 1. It appears that the builders wanted to erect a building with first cost of materials and labor to be as *minimal* as possible. There is much [sic] yearly maintenance costs to be borne by the condominium association. These costs must be recognized by all owners.

> 2. It appears that the builders ignored the building code whenever they felt it was in their best interest. I cannot understand how a certificate of occupancy was issued for any of the units with so many outstanding code violations.

3. The water penetration problems must be addressed immediately so as to halt any possible deterioration of the building components which are covered by other work.

As a result of Sidrane's report, inspections of the building were conducted by the New Jersey Department of Consumer Affairs, the Brigantine Building Inspector, and the Brigantine Bureau of Fire Prevention. The Bank was required to hire a contractor to make substantial repairs in order to remedy the code violations and secure a certificate of occupancy for the 17 units that had been sold at the auction. Following completion of the repairs, a certificate of occupancy for those units was issued in March 1992.

On June 3, 1992, the three plaintiffs filed a multi-count complaint against the Bank and the Developer seeking damages resulting from water infiltration into their respective condominiums. We glean from the record that the original complaint sought recovery based upon alleged construction negligence, successor liability, breach of warranty, violation of the Planned Real Estate Development Full Disclosure Act (PREDFDA) (*N.J.S.A.* 45:22A–21 to –56), breach of sponsor's fiduciary duties under the condominium master deed and bylaws, common law fraud, and violation of the Consumer Fraud Act (*N.J.S.A.* 56:8–1 to –20). The complaint also sought relief on behalf of the condominium association, which at the time of its original filing had not yet been formed. At some point after the issuance of the certificate of occupancy, a condominium association was formed and separate counsel was retained and substituted by the newly formed association.

The Bank filed its answer and named several third-party defendants, including Arthur Petrella, a subcontractor hired by the Developer to provide labor to install siding.[2] In April 1996, the Bank moved for partial summary judgment against the individual plaintiffs asserting that it was not subject, as a matter of law, to liability under the PREDFDA or the Consumer Fraud Act. It also sought summary judgment against McAdams' claim, contending

---

2 Petrella is the only third-party defendant who has filed a brief in this appeal.

that he incurred no damages. On May 24, 1996, two days before the scheduled oral argument, the judge sent the entire matter to mediation. The condominium association's claims eventually settled as the result of mediation. However, the claims of the three individual plaintiffs were not resolved. On May 26, 1996, the judge heard oral argument on the Bank's motion for summary judgment. He dismissed McAdams' complaint in its entirety and dismissed plaintiffs' allegations that the Bank violated the Consumer Fraud Act and PREDFDA. The order was not signed until November 30, 1998, because the mediation process spanned the one and one-half year period between the argument of the motion and the execution of the order.

On August 28, 1998, a conference was held at which the judge suggested that a consent order be entered dismissing the complaint due to its age, and refiling under a new docket number thus permitting additional time for the parties to prepare for trial. The consent order, which was signed by all counsel, provided the following:

This action (the "First Complaint") will be dismissed without prejudice for purposes of calendar control;

All Statute of Limitations and Laches defenses raised in the First Complaint are preserved. If the plaintiffs file another complaint (the "New Action"), exactly the same as the First Complaint, within 15 days of the signing of this Order, then the defendants will waive any additional defenses of Statute of Limitations and Laches solely to the extent they could have been raised as defenses to the New Action. There shall be no waiver of any such defenses absent strict compliance with each and every term and provision of this Order;

If the plaintiffs file the New Action, it will be managed, scheduled for trial and treated for all purposes as if the original complaint had not been dismissed and all orders entered in the original action will be deemed effective in the New Action;

There will be no amendments to the pleadings of the plaintiff except by further Order of the Court;

There will be no additional expert reports submitted by plaintiff;

The parties may consent to the entry of this order in counterparts;

All interlocutory Orders entered in the First Complaint will be deemed to have been entered in the New Action for purposes of preserving the parties' right to take a final appeal from said interlocutory Orders; and

Counsel for the various parties in the First Complaint are deemed authorized to accept service of process on behalf of their respective clients as relates to the New Action.

On September 10, 1999, the judge, without benefit of oral argument, entered an order dismissing plaintiffs' new action in response to a motion filed by defendants asserting that plaintiffs failed to re-file within the statute of limitations waiver period set forth in the consent order.

Plaintiff raises the following points:

*POINT I*

THE COURT BELOW ERRED BY NOT PROPERLY EXERCISING JUDICIAL DISCRETION ALLOWING APPELLANTS TO RE FILE THE COMPLAINT BEYOND THE FIFTEEN DAY TIME PERIOD SET FORTH IN THE CONSENT ORDER.

*POINT II*

THE STANDARD OF REVIEW FOR RULE 4:50-1 MOTIONS DOES NOT APPLY TO CONSENT ORDERS THAT PERTAIN TO THE MANAGEMENT OF A CASE.

*POINT III*

THE COURT BELOW ERRED IN DISMISSING THE INDIVIDUAL PLAINTIFFS' CLAIMS AGAINST DEFENDANT, NATIONAL COMMUNITY BANK UNDER THE PLANNED REAL ESTATE DEVELOPMENT FULL DISCLOSURE ACT AND IN DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION OF THAT DECISION.

*POINT IV*

THE COURT BELOW ERRED IN DISMISSING THE INDIVIDUAL PLAINTIFFS' CLAIMS AGAINST DEFENDANT, NATIONAL COMMUNITY BANK UNDER THE CONSUMER FRAUD ACT AND IN DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION OF THAT DECISION.

We first consider Points I and II in combination. We initially observe that plaintiffs do not contest the fact that the limitation period had expired at the time of the filing of their new action. Plaintiffs essentially argue that the judge mistakenly abused his discretion in precluding them from re-filing their complaint beyond the fifteen-day time period set forth in the consent order of February 16, 1999. We do not agree that the judge's adherence to the limitation period set forth in the consent order resulted in injustice. *R.* 1:1–2. The judge did not prevent plaintiffs from filing a new complaint. The complaint was filed,

albeit beyond the fifteen-day time period. The consent order in question was essentially a voluntary dismissal signed by the court. *R.* 4:37–1(b) provides that a dismissal may be entered at a plaintiff's request after a defendant has answered, "only by leave of court and upon such terms and conditions as the court deems appropriate." *R.* 4:37–1(a) permits a stipulation of dismissal without prejudice to be filed at any time when signed by all parties who have appeared in the action.

Generally, an order consented to by the attorneys for each party is not appealable. *Winberry v. Salisbury,* 5 *N.J.* 240, 255, 74 *A.*2d 406, *cert. denied,* 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L.Ed.* 638 (1950). However, we have held that the legitimate competing demands of calendar control and a reasonable request for a short adjournment should not be resolved by forcing a dismissal, as the result permits an action "only to be brought again, there [being] no net gain in terms of judicial economy except in the statistical sense." *Fehnel v. Fehnel,* 186 *N.J.Super.* 209, 217, 452 *A.*2d 209 (App.Div.1982). Here, there is no indication that the offending consent order entered was forced upon either side because the judge refused a short or otherwise reasonable request for adjournment. The ten-month period that passed between the discussion on August 28, 1998, and the filing of plaintiff's second complaint is inconsistent with the notion that a short adjournment request was refused.

We have no record of the conversation that occurred, presumably in the judge's chambers, and spawned the provisions embodied in the consent order. We assume, in view of counsels' participation and signatures on the order, that they all felt that it was in their respective client's best interest to execute the consent order. We are satisfied that the provisions of the consent order reasonably benefitted both sides to the controversy. The fifteen-day re-filing provision helped to insure that the remaining defendants would not be faced with maintaining an open file for an unknown period of time without knowing when plaintiff would re-institute suit. The limitation period also abated any concern that

the parties might have, that necessary information and witnesses might not be available. The provision that all interlocutory orders entered during the pendency of the first action would be deemed to have been entered in the new action benefitted plaintiffs by preserving their right to appeal the orders granting partial summary judgment in favor of the Bank. Likewise, the provision that no defenses were to be deemed waived benefitted the remaining defendants. The provision that precluded submission of new expert reports, together with the paragraph that provided "if the plaintiffs file the New Action, it will be managed, scheduled for trial and treated for all purposes as if the original complaint had not been dismissed," assured all the parties that the matter would not languish in discovery and would be reached for trial within a short period of time. The use of the word "if" conveys the impression that the parties held out some hope that the matter might be settled in the interim. The use of the same experts, the acceptance of service of process, and the guarantee that the new action would be treated as the original complaint served the pecuniary interest of all parties by ensuring that the dismissal would not result in substantial litigation expense.

It is not our function to decide whether the judge's entry of the consent order was the wisest, or even the best course. Our role is not to substitute our judgment for his. We are satisfied that the judge did not pursue an unjust or unreasonable course in entering the consent order, as its provisions benefitted both sides. *See State v. D'Orsi,* 113 *N.J.Super.* 527, 532, 274 *A.*2d 586 (App. Div.), *certif. denied,* 58 *N.J.* 335, 277 *A.*2d 392 (1971); *Brown v. Mortimer,* 100 *N.J.Super.* 395, 407, 242 *A.*2d 36 (App.Div.1968).

We are also convinced that plaintiffs had to be aware of the statute of limitations problem. It is elementary that a dismissal without prejudice adjudicates nothing and does not constitute a bar to re-institution of the action, subject to the constraint imposed by the statute of limitations. *See* Pressler, *Current N.J. Court Rules,* comment 1 on *R.* 4:37-1 (2000). The limitation period had already run at the time of the August 28 conference.

Surely, counsel for plaintiffs was aware of the need to file a new complaint when the fully executed order was received. The filing of the new action was in no sense close in time to the stipulated fifteen-day limitation period. It was late, not in terms of days or weeks, but months. We cannot conclude that the failure to re-file arose from an honest mistake "compatible with proper diligence" thereby constituting "excusable neglect." *Baumann v. Marinaro*, 95 *N.J.* 380, 394, 471 *A.*2d 395 (1984).

We next consider plaintiffs' contentions that the judge erred in granting partial summary judgment in favor of the Bank. We first observe that the consent order contained a deemer clause, which deemed the interlocutory orders in the first action to have been entered in the new action for appeal purposes. The appropriateness of the entry of partial summary judgment order in favor of the Bank is rendered technically moot by our determination that the new action was subject to the consent order, thus properly dismissed. Nevertheless, we are satisfied that the judge properly entered summary judgment in favor of the Bank on the claims encompassing the Consumer Fraud Statute and PREDF-DA, as well as those asserted by McAdams. We, therefore, address the remaining issues, notwithstanding our decision affirming the final judgment of dismissal.

Plaintiff argues that the Bank is liable to them as a developer under PREDFDA. The act defines developer as "any person who disposes or offers to dispose of any lot, parcel, unit, or interest in a planned real estate development." *N.J.S.A.* 45:22A–23b. The statute expressly holds developers as well as any person who "directly or indirectly" controls the developer, for "disposing of real property subject to [the] act." *N.J.S.A.* 45:22A–37a and c. The provisions of PREDFDA have been held not to apply to a successor of a developer when both the violator and victim are knowledgeable of the violation. *Abrahamsen v. Laurel Gardens Limited Partnership*, 276 *N.J.Super.* 199, 206, 647 *A.*2d 869 (Law Div.1993). Thus, the Bank, as successor to the Developer, cannot be liable to the individual plaintiffs who purchased their units and

were knowledgeable of the water infiltration problems prior to the time that the Bank acquired title, unless the Bank directly or indirectly controlled the Developer.

Plaintiff relies on *Terrace Condominium Association v. Midlantic National Bank,* 268 *N.J.Super.* 488, 633 *A.*2d 1060 (Law Div.1993), for the proposition that the Bank is liable as a lender. The facts in *Terrace,* however, are distinguishable from those here. In *Terrace* the bank accepted a deed in lieu of foreclosure to the property in September 1982, at a time when $1,000,000 worth of construction work was yet to be completed. *Id.* at 492, 633 A.2d 1060. Although there had been advanced sales of some units, the primary construction work undertaken by the Bank was not completed until 1986, after which the property was first occupied. *Id.* at 493, 633 A.2d 1060. Here, by contrast, the Bank was simply a mortgage lender at the time the construction of the building was completed and the individual plaintiffs occupied their respective units. There is no evidence in the record to indicate that the Bank exerted either direct or indirect control over the Developer at the time the plaintiffs were prospective purchasers, acquired title or became occupants of their respective units. *N.J.S.A.* 45:22A–23d.

We are satisfied, from our review of the complete record, that the Bank was simply a mortgage lender at the time of plaintiffs' purchases. Other than to take adequate steps to protect the collateral against which it lent money, the Bank was not in direct or indirect control of the Developer so as to trigger liability pursuant to provisions of PREDFDA. *See Rzepiennik v. U.S. Home Corp.,* 221 *N.J.Super.* 230, 238, 534 *A.*2d 89 (App.Div.1987).

Plaintiffs' argument that the judge erred in dismissing their claims against the Bank for consumer fraud damages likewise lacks merit. The Bank did not sell the condominium units to plaintiffs. The unlawful practices that are proscribed by *N.J.S.A.* 56:8–2 of the Consumer Fraud Act are required to be "in connection with the sale or advertisement of any ... real estate, or with the subsequent performance of such person as aforesaid...." In

*Perth Amboy Iron Works v. American Home Assurance Co.,* 226
*N.J.Super.* 200, 211, 543 *A.*2d 1020 (App.Div.1988), *aff'd,* 118 *N.J.*
249, 571 *A.*2d 294 (1990), we specifically dealt with the subsequent
performance provision of the statute and found that the act
encompasses "the acts of remote suppliers, including suppliers of
component parts, whose products are passed on to a buyer and
whose representations are made to or intended to be conveyed to
the buyer." We held that indirect promises were actionable and
privity was not required.

Our review of the record fails to reveal any direct or indirect
promises made by the Bank that were in any way connected with
the sale of the subject condominium units. Similarly, the record
does not reveal nor does plaintiffs' brief set forth any specific
conduct in violation of the Consumer Fraud Act on the part of the
Bank associated with plaintiffs' individual units, occurring subse-
quent to the time the Bank obtained title.

■■■ We address finally plaintiff McAdams' claim that the
judge improperly found that he failed to sustain any ascertainable
damage. McAdams' own deposition confirmed that he did not
have a manifest problem with his unit as did his fellow plaintiffs.
His concern that sometime in the future he may have problems,
without any definitive qualified expert opinion, is, at best, specula-
tive. Likewise speculative is his assertion concerning any de-
crease in value based solely upon tax assessment valuations absent
any related cause.

■■■ In a summary judgment motion, the court must grant
the non-moving party all favorable inferences from the competent
evidence presented. *Brill v. Guardian Life Ins. Co. of Am.,* 142
*N.J.* 520, 540, 666 *A.*2d 146 (1995). It is improper for us to pass
upon the credibility of McAdams' assertions as that is reserved for
the trier of fact. However, as the *Brill* Court reemphasized, it is
within our province "to determine whether there is a genuine issue
for trial." *Ibid.* That the trier of fact makes determinations as to
credibility "does not require a court to turn a blind eye to the
weight of the evidence; the 'opponent must do more than simply

show that there is some metaphysical doubt as to the material facts.'" *Big Apple BMW Inc. v. BMW of North America, Inc.,* 974 *F.*2d 1358, 1363 (3rd Cir.1992), *cert. denied,* 507 *U.S.* 912, 113 *S.Ct.* 1262, 122 *L.Ed.*2d 659 (1993) (quoting *Matsushita Electric Industrial Co. Ltd., v. Zenith Radio Corp.,* 475 *U.S.* 574, 586, 106 *S.Ct.* 1348, 1356, 89 *L.Ed.*2d 538 (1986)). We are satisfied that there was no genuine issue of material fact because no reasonable jury could conclude that McAdams sustained any ascertainable damage as a result of the alleged wrongs asserted by him in the complaint.

Affirmed.