952 A.2d 525

RICHARD MATERA AND GEORGEANNE MATERA, HIS WIFE, ROBERT PERRY AND CHERYL PERRY, HIS WIFE, CYNTHIA JOY, SUSAN MCCLURE, RICHARD J. ADOMIS AND CHERYL ADOMIS, HIS WIFE, AND CHRISTOPHER FERRAGAMO AND THERESA FERRAGAMO, HIS WIFE, v. M.G.C.C. GROUP, INC., ABBINGTON ASSOCIATES, INC., CHARLES E. LINDSTROM, INDIVIDUALLY, ANDERSON, BALLIS & LINDSTROM, INC. LINDSTROM & DIESSNER ASSOCIATES, P.C., TOWNSHIP OF HOWELL, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, IRWIN NUDELMAN AND WILLIAM GREENBERG, INDIVIDUALLY AND AS OFFICERS, DIRECTORS, OR PRINCIPALS OF M.G.C.C. GROUP, INC., GREGORY R. VALESI

AND CME ASSOCIATES, CONSULTING AND MUNICIPAL ENGINEERS; THE HOWELL TOWNSHIP ENGINEERING DEPARTMENT; ARTHUR GALLEY, INDIVIDUALLY AND AS PRESIDENT OF M.G.C.C. GROUP, INC., GEORGE VEGHTE, GREG SAVINO, BANK OF AMERICA, AND JAMES R. IENTILE, INC.

Superior Court of New Jersey
Law Division Monmouth County

Decided December 13, 2007.

*Richard J. Shackleton* and *Brian J. Coyle,* attorneys for plaintiffs (*Shackleton and Hazeltine,* attorneys).

*Scott McCleary,* attorney for defendant Bank of America, successor to Fleet National Bank, successor to National West Bank, N.A., successor to National Westminster Bank (*Meyner & Landis, LLP,* attorneys).

*Dominic J. Aprile,* attorney for defendants M.G.C.C. Group, Inc., Irwin Nudelman, Arthur J. Galley and William Greenberg (*Bathgate, Wegener & Wolf,* attorneys).

*Walter E. Monaghan,* attorney for defendants M.G.C.C. Group, Inc., Irwin Nudelman, Arthur J. Galley and William Greenberg (*Leary, Bride, Tinker, & Moran,* attorneys).

*Danielle M. DeGeorgio,* attorney for James R. Ientile Inc. and James R. Ientile, individually (*Faust, Goetz, Schenker, & Blee, LLP,* attorneys).

*Linda Grasso Jones,* attorney for defendant James R. Ientile, Inc. (*Cleary, Alfieri, Jones, & Hoyle,* attorneys).

*Linda Olshen Adelsohn* and *John Suarez,* attorney for defendants Abbington Associates, Inc., CME Associates, and Gregory Valesi (*Suarez & Suarez,* attorneys).

*Michael J. McKenna,* attorney for George Veghte, Tom Savino, Howell Township Engineering Department and the Township of Howell (*Hiering, Gannon, & McKenna,* attorneys).

*Parthenopy Bardis,* attorney for defendant Township of Howell (*Scarinci & Hollenback, LLC,* attorneys).

*Nancy Giacumbo,* attorney for defendant Township of Howell (*McGivney & Kluger, P.C.,* attorneys).

*Ernest Bongiovanni,* attorney for defendant Township of Howell (*Bongiovanni & Pavliv,* attorneys).

*Lawrence Powers,* attorney for defendants Lindstrom, Inc. and Lindstrom & Diessner Associates, P.C. (*Hoagland, Longo, Moran, Dunst & Doukas, LLP,* attorneys).

*Joseph C. Glavin,* attorney for defendant First Indemnity of America.

*James P. Lisovicz,* attorney for defendant Selective Insurance Company of America (*Coughlin, Duffy, Kelly, Lisovicz, Midlige, & Wolff,* attorneys).

LOCASCIO, J.S.C.

The within opinion supersedes this court's November 9, 2007, oral decision in the instant matter.

The issue, of first impression, arising from plaintiffs' within motion, is whether a viable consumer fraud cause of action lies where there is no contact between the parties but only between defendant Bank of America's alleged violation of the Consumer Fraud Act and plaintiffs' alleged ascertainable loss. For the following reasons, this court answers this novel question in the affirmative.

Plaintiffs make this motion for reconsideration of this court's September 28, 2007, order dismissing plaintiffs' claims under the Consumer Fraud Act. Plaintiffs contend that defendant Bank of America (hereinafter BOA) concealed documents and made misrepresentations to its purchaser, defendant M.G.C.C., and to the Howell Township Planning Board, in order to gain the planning board's final approval for the construction of section III of Crystal Creek Estates, which permitted the construction of section III

above section II, where plaintiffs' reside, which caused water to flood plaintiffs' backyards and basements, resulting in alleged damage to plaintiffs' properties and hedonic damages to plaintiffs.

Defendant BOA, successor to National Westminster Bank, contends that plaintiffs do not have a valid claim under the Consumer Fraud Act because any conduct of BOA was not "in connection with the sale ... of ... real estate" (*N.J.S.A.* 56:8–2) to plaintiffs, and therefore, there is no causal nexus between defendant BOA's alleged unlawful conduct and plaintiffs' alleged ascertainable loss. (*N.J.S.A.* 56:8–19).

*Facts*

Although plaintiffs, all residents of section II of Crystal Creek Estates, purchased their properties from individual owners (not from BOA), between August 1995 and September 2002, all of their titles can be traced back to Crystal Creek Development Association, the original developer of Crystal Creek Estates. On April 5, 1990, the Howell Township Planning Board granted a conditional site plan approval for section III of Crystal Creek Estates, which required twenty-six conditions to be met before a letter of compliance would be issued and development permitted.

To secure financing for Crystal Creek Estates, Crystal Creek Development Association entered into a loan agreement with National Westminster Bank; however, during the construction of section II, and prior to the construction of section III, Crystal Creek Development Association defaulted on the loan. On May 10, 1993, by deed in lieu of foreclosure from Crystal Creek Development Association, National Westminster Bank of New Jersey, predecessor to defendant BOA, took title to two lots in section II and all of section III of Crystal Creek Estates. BOA attempted to sell the property in 1994, but the sale was stayed pending the outcome of litigation arising out of the construction of sections I and II.

Plaintiffs contend that at the July 18, 1996, planning board hearing in which BOA attempted to satisfy the twenty-six condi-

tions in order to gain approval for construction of section III, BOA made the following misrepresentations and omissions: (1) BOA knew that there would be drainage problems in section II if the plans for section III were followed; (2) BOA knew that in order for section III to drain properly, section II would have to be regraded; (3) BOA knew of the potential drainage problems through documentation provided by their engineer but failed to disclose those documents to the planning board; and (4) BOA had possession of two site plans, but presented only the plan that failed to show that houses were located in section II and represented that BOA owned all of the land, including plaintiffs' properties. Based upon these alleged misrepresentations and omissions, in February 2002, the planning board granted BOA a letter of compliance [1], which permitted BOA, in August 2002, to complete the sale of the two lots in section II and all of section III to defendant M.G.C.C. Group.

Defendant M.G.C.C. Group then proceeded to build section III, during the construction of which water from section III began flooding plaintiffs' properties and homes.

### The Consumer Fraud Act

In order to have a viable consumer fraud claim in the instant matter, plaintiffs must establish that an unlawful act was committed in connection with the sale of real estate (*N.J.S.A.* 56:8–2), which caused an ascertainable loss to plaintiffs. (*N.J.S.A.* 56:8–19). For purposes of the underlying summary judgment motion, pursuant to *R.* 4:46–2(c), considering "the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party," this court concludes that there are genuine issues of material facts to sustain plaintiffs' claims that: (1) unlawful acts were committed by BOA in violation of the Consumer Fraud Act (alleged misrepresentations made by

---

[1] The delay between the July 18, 1996 planning board hearing and the February 2002 letter of compliance was due to unrelated litigation and the remediation of problems in sections I and II.

BOA to the Howell Township Planning Board and defendant M.G.C.C.), and (2) plaintiffs suffered an ascertainable loss (the flooding of plaintiffs' homes and properties as well as alleged hedonic damages). Therefore, the questions left to be answered are (I) were the alleged unlawful acts "in connection with the sale ... of ... real estate" (*N.J.S.A.* 56:8–2), which (II) constitute a nexus between BOA's acts and plaintiffs' losses (*N.J.S.A.* 56:8–19). To answer these questions, the court must analyze the Consumer Fraud Act and its progeny.

## I. In connection with the sale of real estate

*N.J.S.A.* 56:8–2 provides:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

In *O'Loughlin v. Nat'l Comm. Bank,* 338 *N.J.Super.* 592, 606, 770 *A.*2d 1185 (App.Div.2001), the court held that the Consumer Fraud Act did not apply because:

[T]he record fails to reveal any direct or indirect promises made by the Bank that were in any way connected with the sale of the subject condominium units. Similarly, the record does not reveal nor does plaintiffs' brief set forth any specific conduct in violation of the Consumer Fraud Act on the part of the Bank associated with plaintiffs' individual units, occurring subsequent to the time the Bank obtained title.

*O'Loughlin, supra,* involved three of twenty-four condominium units in a residential building owned and built by Boardwalk on the Bay Association, Inc., from whom plaintiffs, between 1989–1990, purchased their units. In 1991, after National Community Bank became owner by deed in lieu of foreclosure of the unsold condominium units, it performed some cosmetic repairs to the property. However, prior to National's ownership of the property, plaintiffs' units were experiencing water infiltration problems. After the New Jersey Department of Consumer Affairs required National to make several repairs to the property to correct code

violations, plaintiffs brought a consumer fraud claim against the bank. In affirming the dismissal of plaintiffs' allegations that the bank violated the Consumer Fraud Act, the court noted:

In *Perth Amboy Iron Works v. Am. Home Assurance Co.*, 226 *N.J.Super.* 200, 211, 543 *A.*2d 1020 (App.Div.1988), *aff'd*, 118 *N.J.* 249, 571 *A.*2d 294 (1990), we specifically dealt with the subsequent performance provision of the statute and found that the act encompasses "the acts of remote suppliers, including suppliers of component parts, whose products are passed on to a buyer and *whose representations are made to or intended to be conveyed to the buyer.*" We held that indirect promises were actionable and privity was not required.

[*Id.* at 605–06, 770 *A.*2d 1185 (emphasis added).]

■ However, *O'Loughlin, supra*, is distinguishable from the within matter. In *O'Loughlin v. Nat'l Comm. Bank, supra*, 338 *N.J.Super.* at 606, 770 *A.*2d 1185, the court found that there were no "direct or indirect promises made by the Bank that were in any way connected with the sale of the subject condominium units." Here, however, BOA's alleged misrepresentations and violations of the Consumer Fraud Act were made not only to the planning board, but were "intended to be conveyed to the buyer" (defendant M.G.C.C.). *Ibid.* Because BOA's obtaining of the letter of compliance from the planning board was necessary to complete the real estate transaction with defendant M.G.C.C., BOA's alleged violations, done in order to get defendant M.G.C.C. to buy the property, were in connection with the sale of real estate. Additionally, the *O'Loughlin* court dismissed plaintiff's action because "the record does not reveal nor does plaintiffs' brief set forth any specific conduct in violation of the Consumer Fraud Act on the part of the Bank associated with plaintiffs' individual units, occurring subsequent to the time the Bank obtained title." *Ibid.* However, in the matter *sub judice*, plaintiffs allege that BOA's predecessor in title, National Westminster Bank of NJ, owned section III at the time plaintiffs purchased their properties from individual owners and that, while BOA was the owner of section III, BOA's omissions and misrepresentations violated the Consumer Fraud Act which caused plaintiffs' damage.

Because any alleged violations of the Consumer Fraud Act, committed by BOA in connection with its presentation to the

Howell Township Planning Board were done to obtain the letter of compliance and thus complete its sale of two lots in section II and all of section III to defendant M.G.C.C., this court finds that said alleged violations were done "in connection with the sale of real estate." *N.J.S.A.* 56:8–2.

## II. The Nexus

*N.J.S.A.* 56:8–19 provides:

Any person who suffers an ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorney's fees, filing fees, and reasonable costs of suit.

In order to properly consider the issues before this court, any analysis of *N.J.S.A.* 56:8–19 must begin with *Neveroski v. Blair*, 141 *N.J.Super.* 365, 358 *A.2d* 473 (App.Div.1976), which held that privity need not exist between defendant and the consumer. In a case dealing with the issue of fraud in real estate before the act was amended to include real estate transactions, the court stated:

We do not consider that privity is a condition precedent to recover under this Act [*N.J.S.A.* 56:8–19]. Section 19 clearly grants a remedy to "any person who suffers any ascertainable loss as a result of the use" of any practice declared unlawful. *There is no provision that the claimant thereunder must have a direct contractual relationship with the seller of the product or service.*

[*Id.* at 376, 358 *A.2d* 473 (emphasis added).]

Thus, in order to establish a claim under *N.J.S.A.* 56:8–19, a plaintiff must prove three elements:

1) the existence of an unlawful act under the Consumer Fraud Act;

2) an ascertainable loss on the part of the plaintiff; and

3) a causal nexus between the unlawful conduct and the ascertainable loss.

[*Varacallo v. Mass. Mut. Life Ins. Co.*, 332 *N.J.Super.* 31, 43, 752 *A.2d* 807 (App.Div.2000).] Logic requires one to conclude that the causal nexus must be between the first two elements (violation and loss), and not some non-element (such as a party). This

analysis is consistent with the *Varacallo* court's statement that "consumer fraud requires only proof of a causal connection *between the concealment of the material fact and the loss.*" *Ibid.* (emphasis added); it did *not* say that consumer fraud requires a connection *between the material act and the parties.*

In *Lemelledo v. Beneficial Mgmt.*, 150 *N.J.* 255, 264, 696 *A.*2d 546 (1997), the Court noted that "[t]he language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely to root out consumer fraud." Two years later the Court further explained that:

> The Consumer Fraud Act has three main purposes: to compensate the victim for his or her actual loss; to punish the wrongdoer through the award of treble damages, *Roberts v. Cowgill,* 316 *N.J.Super.* 33, 45, 719 *A.*2d 668 (App.Div.1998); and, by way of the counsel fee provision, to attract competent counsel to counteract the community scourge of fraud by providing an incentive for an attorney to take a case involving a minor loss to the individual. *Silva v. Autos of Amboy, Inc.,* 267 *N.J.Super.* 546, 555, 632 *A.*2d 291 (App.Div.1993). Because it is a remedial statute, its provisions are construed liberally in favor of the consumer to accomplish its deterrent and protective purposes.
>
> [*Lettenmaier v. Lube Connection, Inc.,* 162 *N.J.* 134, 139, 741 *A.*2d 591 (1999).]

In *Chattin v. Cape May Greene,* 216 *N.J.Super.* 618, 641, 524 *A.*2d 841 (App.Div.1987), the court discussed what was necessary to establish a causal nexus between the ascertainable loss and the wrongful conduct, when it held that subsequent purchasers could not recover under the Consumer Fraud Act where no representations were made to the purchasers regarding allegedly defective window.

> Plaintiffs' argument that subsequent purchasers of homes should have been permitted to recover consumer fraud damages, even though they never received either the brochure or any oral representation from CMG concerning the windows, is clearly lacking in merit. There is no basis for finding a violation of the Consumer Fraud Act with respect to these purchasers because CMG made no representation to them. Stated another way, *these purchasers have not suffered "any ascertainable loss of moneys or property" as a result of CMG's use of a practice declared unlawful by the Consumer Fraud Act, and hence they have no claim under N.J.S.A. 56:8–19.*
>
> [*Ibid.* (emphasis added).]

*Chattin, supra,* however, is significantly distinguishable from the within matter because here plaintiff purchasers allege that they sustained an ascertainable loss (property and hedonic damages) "as a result of [BOA's] use of a practice declared unlawful by the Consumer Fraud Act (misrepresentations to the Howell Township Planning Board in connection with the sale of BOA's property to defendant M.G.C.C.) and hence they" should have a "claim under *N.J.S.A.* 56:8–19." *Ibid.*

In *Gennari v. Weichert Co. Realtors,* 148 *N.J.* 582, 607–08, 691 *A.*2d 350 (1997), the Court, in holding that Weichert Realtors was liable under the Consumer Fraud Act even though plaintiffs did not rely on the misrepresentations allegedly made by Weichert, stated:

> Weichert's liability, however, arises from the [Consumer Fraud] Act, which does not require proof of reliance. Weichert is liable for misrepresentations whether *"any person* has in fact been misled, deceived or damaged thereby." *N.J.S.A.* 56:8–2. Notwithstanding the purchasers' inquiries, the fact remains that Weichert agents misled, deceived, and damaged them.
> [(emphasis added).]

Significantly, the Court stated a violator of the Consumer Fraud Act is liable for any misrepresentations whether *"any person* has in fact been misled, deceived, or damaged thereby" *Ibid.* (emphasis added); it did not say *any party.* Here, both the Howell Township Planning Board and defendant M.G.C.C. were misled by BOA's alleged misrepresentation which damaged plaintiffs.

█ Keeping in mind that "[t]he history of the [Consumer Fraud] Act is one of constant expansion of consumer protection," *Id.* at 604, 691 *A.*2d 350, this court holds that although some nexus is necessary to establish a claim under the Consumer Fraud Act, that nexus need only be between the alleged unlawful conduct and the ascertainable loss; it requires no contact between the parties.

█ In the instant case, plaintiffs claim to have suffered an ascertainable loss as a result BOA's alleged misrepresentations to the Howell Township Planning Board and to the purchaser of BOA's property, defendant M.G.C.C. Group; there is no evidence of any direct or indirect promises made by BOA to plaintiffs.

However, there is a connection between the alleged unlawful conduct and ascertainable loss. Under plaintiffs' theory, if BOA did not misrepresent facts to the Howell Township Planning Board, the planning board would not have granted the letter of compliance and section III would not have been built, or, in the alternative, the drainage problems would have been corrected before the letter of compliance was granted. Under either scenario, plaintiffs' properties would not have been flooded. This theory is legally sufficient because "consumer fraud requires only proof of a causal nexus between the concealment of the material fact and the loss." *Varacallo v. Mass. Mut. Life Ins. Co., supra,* 332 *N.J.Super.* at 43, 752 *A.*2d 807.

■ Allowing plaintiffs to pursue their claim is consistent with the purposes of the Consumer Fraud Act:

[T]o compensate the victim for his or her actual loss; to punish the wrongdoer through the award of treble damages, and, by way of the counsel fee provision, to attract competent counsel to counteract the community scourge of fraud by providing an incentive for an attorney to take a case involving a minor loss to an individual. (citation omitted)

[*Lettenmaier v. Lube Connection, Inc., supra,* 162 *N.J.* at 139, 741 *A.*2d 591. (internal citation omitted).]

In this case, due to BOA's alleged violations of the Consumer Fraud Act, plaintiffs have allegedly suffered property and hedonic damages. Therefore, if proven, it is proper to hold BOA liable for the damages under the Consumer Fraud Act even though BOA had no contact with plaintiffs.

### Conclusion

For the foregoing reasons, plaintiffs' motion for reconsideration of this court's September 28, 2007, order dismissing plaintiffs' consumer fraud claim against BOA is granted; said claim is hereby reinstated.