**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4478-17T4

JOAN HAGGERTY,

 Petitioner-Respondent,

v.

CROTHALL SERVICE GROUP,

 Respondent-Appellant.

_____

Argued March 12, 2019 – Decided May 3, 2019

Before Judges Suter and Geiger.

On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2014-4978.

Francis W. Worthington argued the cause for appellant (Worthington & Worthington, attorneys; Francis W. Worthington, on the brief).

Lindsay T. Byrne argued the cause for respondent (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys; Lindsay T. Byrne, on the brief).

PER CURIAM

Crothall Service Group (Crothall) appeals the order for medical benefits that required it to pay for stem cell therapy for petitioner Joan Haggerty. We reverse the court's May 25, 2018 order for medical benefits and remand for further proceedings.

Petitioner tore her left rotator cuff and bicep tendon shaking a heavy bedspread as a housekeeper for the Cape May Regional Medical Center, and had surgery to repair the tears. A few months later, she sustained an injury to her cervical spine and another left shoulder injury "while making a bed and stretching the sheets," and had a second surgery on her left shoulder. Petitioner complained her right shoulder was injured due to overuse resulting from the left shoulder injuries. She filed separate worker's compensation claims for the shoulder injuries, and amended them more than a year later to add the derivative right shoulder injury claim. Petitioner had surgery on her right shoulder.

An order for medical and disability benefits was entered in 2015 (2015 order) that approved treatment for petitioner's right shoulder by Dr. Matthew Pepe, an orthopedist. He referred petitioner to Dr. Peter Corda for pain management, who then referred her to Dr. Charles Krome. Dr. Krome's report indicated petitioner had osteoarthrosis and a partial tear of the right rotator cuff. He recommended, and workers' compensation approved, four platelet-rich

plasma injections. When petitioner did not obtain relief from these, Dr. Krome recommended she undergo stem cell treatment for the right shoulder as "an appropriate next conservative measure," although she would "probably require" total shoulder replacement surgery in a few years.

Petitioner filed a motion for medical benefits (2018 motion) seeking to compel Crothall to pay for the stem cell therapy and then amended the motion to add a request to enforce the 2015 order. Petitioner's motion included a report by Dr. Krome where he recommended stem cell therapy as her "last option before another surgery is done." Crothall's opposition included a copy of an article about stem cell treatment that said it was not approved by the U.S. Food and Drug Administration (FDA) except in limited circumstances involving blood production disorders. Dr. Krome provided a supplemental report that continued to endorse the use of stem cell therapy for petitioner as "medically necessary" because it was the only option for her other than total shoulder replacement.

The worker's compensation judge conferenced the case in chambers on May 4, 2018. Because the judge had questions for Dr. Krome, petitioner's counsel called Dr. Krome from the judge's chambers. The judge asked

questions, but Dr. Krome was not under oath nor was the conversation recorded. Neither counsel asked any questions of Dr. Krome.

Three weeks later, the judge conducted a hearing on petitioner's 2018 motion for medical benefits and to enforce the 2015 order. Only petitioner testified. On May 25, 2018, the judge ordered that "stem cell therapy [was] authorized at the expense of the respondent, to be supplied by Dr. Krome."

In his Amplification of Decision of May 25, 2018 for Medical Treatment, issued a few weeks later, the judge found petitioner was credible when she testified she did not want another shoulder surgery, and that she needed to work to keep her health insurance because her husband was terminally ill. Although petitioner claimed she was aware of and accepted the risks of stem cell therapy, and knew it was not FDA approved, she was not aware the treatment "may only provide temporary relief" and that she may still need replacement surgery on her right shoulder. The judge referenced correspondence from Dr. Corda, who noted that stem cell treatment was "widely used in professional sports."

The judge found Dr. Krome was "polite and credible" in the May conference in chambers. Dr. Krome acknowledged that the stem cell treatment was not FDA approved for shoulder treatment, and that petitioner will need shoulder replacement surgery in four years even if the stem cell therapy is

successful. The judge noted that Crothall did not submit an expert report or testimony.

The judge found that both Dr. Krome and Dr. Corda recommended stem cell treatment for petitioner. Dr. Krome's report said it was "medically necessary" because there was no other treatment except for shoulder replacement surgery. The judge found the treatment was "reasonable" given her "three prior shoulder surgeries," and need to continue working to maintain her health benefits. The court approved the treatment, finding it "will relieve petitioner's work related condition."[1]

On appeal, Crothall contends the court erred by determining that Dr. Krome was credible without taking medical testimony. It argues that stem cell treatment was not reasonable or necessary medical treatment. Crothall claims the treatment does not satisfy "the test articulated" in Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), because it is not FDA approved and has not been accepted in the relevant scientific community to treat petitioner's condition.

We are bound to uphold the findings of the worker's compensation judge if they "'could reasonably have been reached on sufficient credible evidence

---

[1] Subsequently, the court denied Crothall's motion to stay, and denied petitioner's motion to enforce, without prejudice.

A-4478-17T4

present in the record,' considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge of their credibility." Close v. Kordulak Bros., 44 N.J. 589, 599 (1965) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). And although we "defer to the [judge's] expertise in analyzing medical testimony," Kaneh v. Sunshine Biscuits, 321 N.J. Super. 507, 511 (App. Div. 1999), the judge's findings "must be supported by articulated reasons grounded in the evidence." Lewicki v. N.J. Art Foundry, 88 N.J. 75, 89-90 (1981). "Accordingly, if in reviewing an agency decision an appellate court finds sufficient credible evidence in the record to support the agency's conclusions, that court must uphold those findings even if the court believes that it would have reached a different result." In re Taylor, 158 N.J. 644, 657 (1999).

Under the Workers' Compensation Act (the Act), N.J.S.A. 34:15-1 to -146, an employer must furnish an injured worker with medical treatment and services necessary "to cure and relieve the worker of the effects of the injury and to restore the functions of the injured member or organ" if possible. N.J.S.A. 34:15-15. The Act is to be liberally construed in favor of employees. Squeo v. Comfort Control Corp., 99 N.J. 588, 596 (1985).

A motion for medical benefits "shall evidence that petitioner is currently temporarily totally disabled and/or in need of current medical treatment."

N.J.A.C. 12:235-3.2(a).  The motion is to contain "[a]ffidavits or certifications made in personal knowledge by the petitioner or the petitioner's attorney, as well as the report(s) of a physician(s) stating the medical diagnosis and the . . . treatment being sought."  N.J.A.C. 12:235-3.2 (b) (2).  Respondent shall file an answer within certain time frames.  N.J.A.C. 12:235-3.2(d).  Under the regulations,

> [a]ffidavits, certifications and medical reports submitted . . . may constitute a prima facie case and may be sufficient basis for the issuance of an order compelling the respondent to provide the relief sought unless respondent files supporting affidavits or certifications to oppose said motion on a legal or factual basis, or files medical reports if there is a medical basis to oppose said motion.
>
> [N.J.A.C. 12:235-3.2 (f).]

We held with respect to a similar regulation that "a motion for temporary disability or medical benefits accompanied by supporting documentation can prevail without plenary hearing only if opposing documents are facially insufficient to fairly meet, contradict or oppose the material allegations of the documents in support of the motion."  Hogan v. Garden State Sausage Co., 223 N.J. Super. 364, 367 (App. Div. 1988).  Where there is opposition, "[t]he [j]udge of [c]ompensation may not decide the motion by assigning greater weight to one physician's report or another."  Ibid.  Unless the facts are uncontradicted or

7

respondent waived the right for cross-examination, "the [j]udge must give the petitioner the opportunity to present witnesses for respondent's cross-examination and, if petitioner so elects, for direct examination." Ibid.

Crothall submitted a certification from counsel raising the issue that stem cell treatment was not FDA approved. Crothall also reserved "the right to cross-examine all physicians upon whom the petitioner will rely in proof of the claim." Under the regulations, the judge was required to hold a hearing where Crothall could cross-examine witnesses.

Critical to the court's order was its finding that Dr. Krome was credible based on the phone conversation the judge had with Dr. Krome that was not recorded and was not under oath. "Credibility findings [are] . . . influenced by . . . observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." State v. Locurto, 157 N.J. 463, 474 (1999) (citing State v. Jamerson, 153 N.J. 318, 341 (1998)). We generally will not disturb credibility findings except based on a conviction "that the judge went so wide of the mark, a mistake must have been made." Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 589 (1988) (quoting Johnson, 42 N.J. at 162).

This credibility finding was based on testimony taken over the phone. Even if credibility could be determined in that manner, without a record there is no ability to review what was said. See R. 1:2-2 (providing that "[i]n the trial divisions of the Superior Court . . . all proceedings in court shall be recorded verbatim" with few exceptions). In Fehnel v. Fehnel, 186 N.J. Super. 209, 217 (App. Div. 1982), we reminded

> counsel and the trial judge of their joint and mutual obligation to make a record and to request and provide for record notation of events occurring in chambers. Depending on the nature of those events, they should be either transcribed or summarized so that, among other purposes which such record preservation fulfills, a reviewing court will also have the benefit thereof.

Where an important issue is discussed in chambers, "a record must be made or a summary placed on the record as to what transpired in chambers. Only then is effective appellate review insured." Klier v. Sordoni Skanska Const., 337 N.J. Super. 76, 86 (App. Div. 2001). We see no reason why the same caution should not apply where the motion for medical benefits is contested and a hearing is necessary.

We recognize that under the Act, "hearing evidence, exclusive of ex parte affidavits, may be produced by both parties, but the official conducting the hearing shall not be bound by the rules of evidence." N.J.S.A. 34:15-56. We

9

also have held that "[w]hile the technical rules of evidence may be relaxed at workmen's compensation proceedings, they may not be relaxed to the point of infringing on the parties' due process rights or other fundamental rights." Paco v. Am. Leather Mfg. Co., 213 N.J. Super. 90, 95-96 (App. Div. 1986) (citing 3 Larson, The Law of Workmen's Compensation, § 79.25(c) (1983)). This includes the right of cross-examination. See id. at 96; see also California v. Green, 399 U.S. 149, 158 (1970) (describing cross-examination as "the greatest legal engine ever invented for the discovery of truth" (quoting 5 Wigmore on Evidence § 1367 (3d ed. 1940))); State v. Castagna, 187 N.J. 293, 309 (2006) (emphasizing importance and efficacy of cross-examination).

Crothall opposed stem cell treatment because it was not FDA approved. Dr. Krone's testimony in chambers was not recorded and it was not taken under oath, yet it was found to be credible by the judge without affording Crothall the opportunity for cross-examination. We find that the procedures lacked fundamental fairness. We reverse the order and remand the motion for medical benefits to the workers compensation division for further proceedings consistent with this opinion. We do not express an opinion in support of or against petitioner's claim for stem cell treatment in light of the inadequacy of this record.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4478-17T4