**NN&R, INC., Plaintiff,**

v.

**ONE BEACON INSURANCE GROUP, and its successor, derivative or acquiring entities and Triester, Rossman & Associates, Inc., Defendants.**

No. CIV.03–5011(JBS).

United States District Court, D. New Jersey.

March 15, 2005.

516

Daniel B. Zonies, Esq., Law Offices of Daniel B. Zonies, Cherry Hill, NJ, for Plaintiff.

Mark J. Hill, Esq., Diana L. Moro, Esq., Mark J. Hill & Associates, P.C., Moorestown, NJ, for Defendant One Beacon Insurance Group.

## OPINION

SIMANDLE, District Judge.

Plaintiff, a New Jersey corporation, has brought this action against Defendants One Beacon Insurance Group ("One Beacon") and Triester, Rossman & Associates, Inc. ("Triester"), alleging claims for breach of contract, bad faith dealing and common law fraud, as well as claims under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1 to –20, and the New Jersey Unfair Claim Settlement Practices Act, N.J.S.A. 17B:30–13.1. (Am.Compl.) Defendant One Beacon has moved to dismiss the Amended Complaint and to strike certain portions therefrom.[1] [Docket Item 26.]

## I. BACKGROUND

This action arises from the structural collapse of a building at 326 Market Street, Camden New Jersey. Plaintiff, the alleged owner and operator of a small restaurant and apartment units located at that address, alleges that the building was severely damaged in February 2000 when the contiguous property was legally demolished. Prior to that event, CGU Insurance, One Beacon's predecessor, issued insurance policies through Triester, Rossman & Associates, Inc. providing property and liability coverage to Plaintiff. A dispute involving one of those policies, Number CPLP 53356 (the "Policy"), has given rise to this action.

Plaintiff, together with William Rosenberg, filed its original complaint against Defendant One Beacon in Superior Court, Camden County, New Jersey, alleging claims of breach of contract and common law fraud, as well as claims under the Consumer Fraud Act. (Compl.) The case was properly removed to this Court, [Docket Item 1], and Defendants subsequently moved for dismissal and a more particularized pleading of the fraud claims asserted by NN & R.

By Order dated May 7, 2004, this Court dismissed all claims asserted by William Rosenberg individually, and granted One Beacon's motion for a more particularized pleading, requiring Plaintiff to file and serve an Amended Complaint which clarified the basis for:

(1) its common law fraud claim;

(2) its claim of violations of the New Jersey Consumer Fraud Act, providing special emphasis in the amendment on allegations involving pre-insurance events and insurance adjustment practices; and

(3) its claim regarding a breach of the duty of good faith and fair dealing, providing special emphasis in the amendment on allegations involving a delay in payments under the policy.

[Docket Item 16.] Plaintiff then filed the Amended Complaint which is the subject of the instant motions.

## II. STANDARDS OF REVIEW

### A. 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A dis-

---

1. On October 14, 2004, Defendant Triester moved for judgment on the pleadings. [Docket Item 28]. That motion is not presently before the Court and will not be decided at this time.

trict court must accept any and all reasonable inferences derived from those facts. *Unger v. Nat'l Residents Matching Program,* 928 F.2d 1392 (3rd Cir.1991); *Glenside West Corp. v. Exxon Co., U.S.A.,* 761 F.Supp. 1100, 1107 (D.N.J.1991); *Gutman v. Howard Sav. Bank,* 748 F.Supp. 254, 260 (D.N.J.1990). Further, the court must view all allegations in the Complaint in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994).

It is not necessary for the plaintiff to plead evidence, and it is generally not necessary to plead the facts that serve as the basis for the claim. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 446 (3d Cir.1977); *In re Midlantic Corp. Shareholder Litigation,* 758 F.Supp. 226, 230 (D.N.J.1990). The question before the court is not whether plaintiffs will ultimately prevail; rather, it is whether they can prove any set of facts in support of their claims that would entitle them to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the non-movant, plaintiff's allegations state a legal claim. *Markowitz,* 906 F.2d at 103.

In an action for fraud, though, the plaintiff is subject to heightened pleading requirements. Specifically, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). To be sure, Rule 9(b) does not require that a plaintiff claiming fraud plead the date, place or time of the fraud so long as she uses "alternative means of injecting precision and some measure of

substantiation into their allegations of fraud." *Mardini,* 92 F.Supp.2d at 385 (quoting *Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 658 (3d Cir. 1998)). However, in order to satisfy the "required level of specificity articulated in Rule 9(b)," a plaintiff may not rely merely on "conclusory statements." *Mardini,* 92 F.Supp.2d at 385. Instead, the plaintiff must indicate at the very least who made the material representation giving rise to the claim and what specific representations were made. *Id.*

## III. DISCUSSION

### A. *Motion to Dismiss*

#### 1. *Count I—Common Law Fraud and Breach of Contract*

##### (a) *Common Law Fraud*

Plaintiff claims in Count I that Defendant One Beacon fraudulently misrepresented to Plaintiff that incremental increases in premiums under the Policy would be accompanied by increases in coverage when, in fact, that was not the case.

"In order to articulate a cause of action for fraud, a plaintiff must show that the defendant made 'a material representation of a presently existing or past fact, . . . with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment.'" *Mardini v. Viking Freight, Inc.,* 92 F.Supp.2d 378, 385 (D.N.J.1999) (quoting *Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 N.J. 37, 477 A.2d 1224, 1232 (1984)).

Here, a proper reading of the Amended Complaint reveals that the misrepresentations alleged by Plaintiff were made exclusively by Bob Kasen, an employee of Triester. (Am. Compl. Count II at ¶¶ 2–4.) To be sure, the Amended Complaint does state that "Defendants, and each of

them, materially misrepresented the policy to Plaintiff ... because incremental increases in the premiums did occur, however the coverage did not increase." (*Id.* ¶ 4.) Despite that claim, though, Plaintiff expressly admits that it "solely dealt with Bob Kasen" at the time it secured the coverage at issue. (Am. Compl. Count II at ¶ 2.) In essence, then, Plaintiff is arguing that One Beacon should be held liable for the allegedly fraudulent misrepresentations of a Triester employee. (Pl. Br. at 3.)

■ If an individual or an entity is clothed with apparent or real authority to speak and act for and on behalf of another, the latter is bound thereby. *Kugler v. Koscot Interplanetary, Inc.*, 120 N.J.Super. 216, 293 A.2d 682, 690 (1972) (citing *Goodman v. FTC*, 244 F.2d 584, 592 (9th Cir.1957)). In *Kugler*, the court held that a company could be held liable for the fraudulent misstatements of its independent contractors. There, an action was brought by the Attorney General of New Jersey under the Consumer Fraud Act against a corporation, Koscot, engaged in the sale and distribution of cosmetics through non-exclusive distributorships. Over a two-year period, Koscot offered for sale and sold distributorships in New Jersey which entitled the purchaser to participate in the Koscot marketing plan in the sale of cosmetics and the recruitment and sale of further distributorships. The principal method of recruiting distributors was through a public presentation known as the "Golden Opportunity" meeting, supplemented by a charter flight program to Koscot's home office in Florida, known as the "Golden Opportunity Tour." The form and substance of the meetings were in accordance with Koscot's directives and the format for these meetings was set forth in a script prepared and published by Koscot. Moreover, many if not all of the Golden Opportunity meetings and Tours were organized and conducted by the Koscot State Director, a Koscot employee, and by area subdirectors chosen by the State Director.

The Attorney General alleged that the statements and omissions of the distributors at the Golden Opportunity meetings were fraudulent. Koscot denied liability for any misrepresentations or other fraudulent practices on the ground that the distributors were independent contractors. In rejecting Koscot's argument, the court emphasized that "[i]t is clear that whether or not the statements were made by independent contractors or agents, they were authorized and even directed by Koscot. Having so controlled the situation for its own benefit, Koscot may not now, on the basis of a contract which is drafted, disclaim liability and hold out its 'independent contractors' as a shield for its wrongdoing." *Id.*

As in *Kugler*, the question here is whether One Beacon exercised that degree of control over Bob Kasen, the Triester employee alleged to have made the misrepresentations, such that One Beacon can not be fairly shielded from liability resulting therefrom. Whether Triester was acting as One Beacon's insurance agent or as Plaintiff's insurance broker when it issued the Policy is essential to this determination. Under the New Jersey Insurance Producer Licensing Act, an "insurance agent" is "a person authorized, in writing, by any insurance company to act as its agent to solicit, negotiate or effect insurance contracts on its behalf or to collect insurance premiums and who may be authorized to countersign insurance policies on its behalf." N.J.S.A. 17:22A–2(f). An "insurance broker," on the other hand, is "a person who, for commission, brokerage fee, or other consideration, acts or aids in any manner concerning negotiation, solici-

tation or effectuation of insurance contracts as the representative of an insured or prospective insured; or a person who places insurance in an insurance company that he does not represent as an agent." N.J.S.A. 17:22A–2(g).

■■ If Triester were acting as an insurance broker, by its very definition it was acting on behalf of Plaintiff, not One Beacon. In that case, the misstatements made by a Triester employee are not attributable to One Beacon. If, on the other hand, Triester was One Beacon's insurance agent, the statement could be attributed to One Beacon. To establish this sort of agency relationship, though, the insurer must have authorized the putative agent *in writing* to act in that capacity. Not only has Plaintiff failed to specifically identify Triester as One Beacon's insurance agent, the facts pleaded do not support that conclusion. Indeed, Plaintiff does not allege the existence of any agreement between One Beacon and Triester, let alone one reduced to writing. Moreover, Plaintiff does not claim that One Beacon authorized the alleged misstatement or even knew that such a statement was made. Contrary to Plaintiff's suggestion, that "One Beacon drafted the terms and issued the policy," (Pl. Br. at 4,) with nothing more, does not support a finding of agency.

In sum, Plaintiff has not stated with the requisite specificity a claim for fraud against One Beacon. The Court will not allow Plaintiff the opportunity to conduct discovery on this claim in the hopes that it may uncover something probative. Rule 9(b) requires that at least some of those facts be pleaded now. The Count I fraud claim will be dismissed.

### (b) *Breach of Contract*

■ Plaintiff additionally alleges in Count I that the coverage provided by the Policy commenced in 1989 and lasted through and beyond February 2000. Plaintiff claims that One Beacon breached the terms of that contract by failing to make certain payments to Plaintiff, as required by the Policy, in connection with the damage sustained to the insured property. Those allegations are sufficient to make out a claim for breach of contract and, thus, despite One Beacon's factual assertion that the Policy expired in 1990, this claim will not be dismissed.

### 2. *Count II—New Jersey Consumer Fraud Act*

Plaintiff claims in Count II that Defendants violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1 *et seq.*, when Bob Kasen materially misrepresented to Plaintiff that the incremental increases in its insurance premium would be accompanied by increases in coverage.[2] (Am. Compl. Count II at ¶¶ 3, 4.) Under N.J.S.A. 56:8–2:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, os declared to be an unlawful practice . . . .

2. The Amended Complaint repeatedly misidentifies the Consumer Fraud Act as N.J.S.A. 58:8–22. This mistake is of no consequence, though, as the claim against One Beacon under the Consumer Fraud Act is without merit and must be dismissed.

One Beacon argues that for several reasons Count II should be dismissed.

■ First, Defendant One Beacon argues that the Consumer Fraud Act does not provide a private right of action here. (Def. Br. at 11–12.) In *Lemelledo v. Beneficial Mgmt. Corp.*, 150 N.J. 255, 696 A.2d 546, 551 (1997), the New Jersey Supreme Court recognized that "although several lower courts have held that the payment of insurance benefits is not subject to the [Consumer Fraud Act] . . . our reading of the [Consumer Fraud Act] convinces us that the statute's language is ample enough to encompass the sale of insurance policies as goods and services that are marketed to consumers." (citations omitted). Thus, the Consumer Fraud Act does provide for a private right of action for claims stemming from "insurance-sales practices," such as the claim here. *Id.* at 551–52.

■ Second, One Beacon argues that the applicable statute of limitations bars Plaintiff's claim. A claim under the Consumer Fraud Act is governed by a six year statute of limitations. N.J.S.A. 2A:14–1; *DiIorio v. Structural Stone & Brick Co.*, 368 N.J.Super. 134, 845 A.2d 658, 663 (2004). A cause of action for fraud "accrues when a plaintiff knows or should know of its existence." *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410 (3d Cir.1999).

> The plaintiff must be aware of an injury and a causal relationship between the injury and an actor, but need not know that the conduct is tortious or legally wrongful. When the gist of the action is fraud concealed from the plaintiff, the statute begins to run on discovery of the wrong or of facts that reasonably should lead the plaintiff to inquire into the fraud.

*Id.* (citing N.J.S.A. 2A:14–1; *Lopez v. Swyer*, 62 N.J. 267, 300 A.2d 563, 567 (1973)).

■ Defendant One Beacon correctly observes that the alleged material misrepresentation was made in December 1989. (Am. Compl. Count II ¶ 1.) Plaintiff, however, claims that it did not discover that "Defendants, and each of them, had unilaterally lowered the coverage" until approximately February 25, 2000, the time that the structural damage was allegedly sustained. Plaintiff's original complaint was filed on October 22, 2003. [Docket Item 1.] Accordingly, Plaintiff's Consumer Fraud Act claim is not barred by the applicable statute of limitations.

Third, One Beacon seeks dismissal of Count II on the ground that Plaintiff fails to plead that One Beacon had any involvement in the sale of the Policy and, thus, that it can not be held liable under the Consumer Fraud Act. (Def. Br. at 7–11.) Specifically, One Beacon asserts that Plaintiff represented to this Court at oral argument at the May 7, 2004 hearing, that "there was absolutely no contact between plaintiff and One Beacon prior to the collapse which gave rise to the claim on February 22, 2000." (Def. Br. at 8.) According to Defendant, all alleged communications were with Triester and its employees, not with One Beacon directly.

Plaintiff, on the other hand, argues that the Consumer Fraud Act does not "require contact or some type of communication directly between the defrauder and the victim." (Pl. Br. at 6.) Thus, according to Plaintiff, that it "solely dealt with Bob Kasen," a Triester employee, does not protect One Beacon from liability. (*See* Am. Compl. Count II ¶ 2.)

■ "The Act is applicable if the nature of the transaction comes within the purview of the Act, . . . and if defendants' conduct amounted to an unconscionable

commercial practice." *Perth Amboy Iron Works v. American Home Assurance Co.,* 226 N.J.Super. 200, 543 A.2d 1020, 1024 (1988), *aff'd,* 118 N.J. 249, 571 A.2d 294 (1990). With respect to the first question, Plaintiff here is correct that the Consumer Fraud Act encompasses indirect communications. In *Perth Amboy Iron Works,* 226 N.J.Super. 200, 543 A.2d 1020, the plaintiff alleged a violation of the Consumer Fraud Act stemming from the purchase of a sport fishing boat manufactured by the defendant, Ocean Yachts. The yacht's engines were manufactured by Detroit Diesel Allison ("DDA"), a division of General Motors ("GM") and supplied to Ocean Yachts ("OY") by defendant Johnson & Towers ("J & T"), an authorized GM distributor who modified the engines for higher performance. Starting from its maiden voyage, the yacht began experiencing mechanical and electrical defects. Though these problems were repaired under warranty by OY, the yacht continued to suffer from structural and electrical problems. The plaintiff sued GM under the Consumer Fraud Act, claiming that even though GM knew that modifications to GM engines made by GM distributors were unsafe and defective, GM permitted the GM and DDA logos to remain on the engines; that GM and J & T concealed the defective nature of the engines after the sale; and that OY made material misrepresentations to the plaintiff inducing it to buy the yacht, and then concealed damage it knew the yacht had sustained.

The court held that as to GM and J & T, "the active concealment of known safety or significant operational problems would ... have satisfied the Act." *Id.* at 1026. In other words, the court "interpret[ed] the Consumer Fraud Act to encompass the acts of remote suppliers, including suppliers of component parts, whose products are passed on to a buyer and whose repre-

sentations are made to or intended to be conveyed to the buyer." *Id.*

In *O'Loughlin v. Nat'l Cmty. Bank,* 338 N.J.Super. 592, 770 A.2d 1185 (2001), the court reiterated its holding in *Perth Amboy* that under the Consumer Fraud Act "indirect promises [are] actionable and privity [is] not required." The court, relying on *Perth Amboy,* held that direct or indirect promises made by a third party may be actionable under the Consumer Fraud Act if the representations are connected with the sale of merchandise. *O'Loughlin,* 338 N.J.Super. 592, 770 A.2d 1185.

There, the plaintiffs' claims under the Consumer Fraud Act arose in connection with the sale of several condominium units in a 24 unit development. Construction began on the condominium project after the developer obtained a $3,000,000 loan from the defendant bank. That loan was secured by a mortgage on the property. After the developer defaulted on its loan, the Bank accepted a deed in lieu of foreclosure to seventeen units, resolving its mortgage default dispute with the developer. The bank performed some minimal repairs and named itself the condominium sponsor, thereby replacing the original sponsor. Eventually, a number of building code violations were discovered and the bank was required to hire a contractor to make substantial repairs in order to remedy the code violations. Shortly thereafter, several of the units allegedly suffered damage resulting from water infiltration. Three plaintiffs filed a multi-count complaint against the bank and the developer alleging, among other things, violation of the Consumer Fraud Act.

In upholding the dismissal of these claims, the court first noted that the Consumer Fraud Act encompasses the acts of suppliers of merchandise "whose products are passed on to a buyer and whose repre-

sentations are made to or intended to be conveyed to the buyer." *O'Loughlin,* 770 A.2d at 1194 (citing *Perth Amboy,* 543 A.2d at 1026). The court then concluded:

> Our review of the record fails to reveal any direct or indirect promises made by the Bank that were in any way connected with the sale of the subject condominium units. Similarly, the record does not reveal nor does plaintiffs' brief set forth any specific conduct in violation of the Consumer Fraud Act on the part of the Bank associated with plaintiffs' individual units, occurring subsequent to the time the Bank obtained title.

*O'Loughlin,* 770 A.2d at 1194.

The rationales underlying *Perth Amboy* and *O'Loughlin* support the conclusion that One Beacon can be held liable under the Act even in the absence of direct conduct with Plaintiff. The remaining question here, then, is whether Plaintiff has sufficiently pleaded that the conduct of One Beacon amounted to an unconscionable commercial practice under the Act. As the following discussion illustrates, it has not.

■■■ "An unconscionable commercial practice necessarily entails a lack of good faith, fair dealing, and honesty. The capacity to mislead is the prime ingredient of all types of consumer fraud. Mere customer dissatisfaction does not constitute consumer fraud." *In re Van Holt,* 163 F.3d 161, 168 (3d Cir.1998). Here, Plaintiff claims that Defendants failed to make certain payments for "replacement cost" under the Policy "even though they led Plaintiff into believing they would at the time Plaintiff entered into the said insurance contract in violation of" the Consumer Fraud Act. (Am. Compl. Count II at ¶ 10.) Plaintiff concedes, however, that it is aware of no communications between One Beacon and Triester regarding the Policy. (Pl. Br. at 6.) Rather, Plaintiff

dealt solely with Bob Kasen. As discussed above, however, the misrepresentations allegedly made by Kasen can not be attributed to One Beacon.

■■■ The Amended Complaint further claims, though, that One Beacon violated the Consumer Fraud Act by its failure to "provide[ ] the contractually required compensation" under the Policy. (Am. Compl. Count II at ¶ 11.) This too, however, does not amount to unconscionable conduct. Indeed, "[t]he mere denial of insurance benefits to which ... plaintiffs believe[ ] they [are] entitled does not comprise an unconscionable commercial practice." *In re Van Holt,* 163 F.3d at 168. "Mere customer dissatisfaction does not constitute consumer fraud." *Id.* at 168. Without more, the mere denial of claims does not support a claim of unconscionable conduct.

Because Plaintiff has not alleged conduct by One Beacon that can properly be characterized as an unconscionable commercial practice, Count II must be dismissed.

### 3. *Count III—Bad Faith Dealing*

■■■ In Count III, Plaintiff claims that One Beacon committed "bad faith dealing"_in connection with the issuance of the Policy and subsequent denial of claims. New Jersey courts imply a duty of good faith and fair dealing in all contracts. *Paul Revere Life Ins. Co. v. Pataniak,* 2004 WL 1059805, *2, 2004 U.S. Dist. LEXIS 7669, at *6 (D.N.J.2004). "[W]hen a breach of the duty of good faith and fair dealing can be shown, liability may be had in tort as well as in contract under New Jersey common law." *Id.* at *3, 2004 U.S. Dist. LEXIS 7669, *7. In the context of a denial of insurance benefits, New Jersey applies the "fairly debatable" standard— "[i]f a claim is 'fairly debatable,' no liability

in tort will arise." *Pickett v. Lloyd's,* 131 N.J. 457, 473, 621 A.2d 445, 453 (1993). More specifically,

> [t]o show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. * * * implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless * * * indifference to facts or to proofs submitted by the insured.

*Id.* (citing *Bibeault v. Hanover Ins. Co.,* 417 A.2d 313, 319 (R.I.1980)).

 Plaintiff has pleaded an absence of good faith on the part of One Beacon for (1) under-insuring the property and concealing information relating to that fact; (2) misrepresenting the terms of the Policy; (3) failing to reinstate Plaintiff's restaurant insurance Policy; (4) failing to inform Plaintiff of policy changes in or about July 16, 1999; (5) its deceptive and misleading actions in processing Plaintiff's claim; (6) intentionally defaulting on payments due; and (7) cancelling Plaintiff

from future coverage without providing notice or explanation therefor. (Am. Compl. Count III.) Plaintiff's claim is, thus, sufficient to withstand the present motion.[3] Count III will remain.

### 4. Count IV—New Jersey Unfair Claim Settlement Act

In Count IV of the Amended Complaint, Plaintiff claims that Defendants violated the New Jersey Unfair Claim Settlement Practices Act, N.J.S.A. 17B:30–13.1, by misrepresenting the terms of the casualty and business loss policies at issue here. (Am. Compl. Count IV ¶¶ 4,5.) Additionally, Plaintiff claims that Defendants "failed to promptly settle claims, where liability for total loss [was] not subject to legitimate dispute." (*Id.* ¶ 6.)

 One Beacon argues that the Unfair Claim Settlement Act does not apply to general liability and property insurance like the policy at issue. The full title of the Act makes clear that Defendant is correct and that this action is not governed by that provision: "An Act prohibiting insurance companies from engaging in unfair claims settlement practices, *concerning life and health insurance* ...."[4] (empha-

---

**3.** Defendant One Beacon seeks dismissal of Count III solely on the basis that the Policy obtained in 1989 was not in effect at the time that Plaintiff's building sustained damage. The Amended Complaint, however, states that the coverage provided by the Policy at issue here lasted "through and beyond February of 2000." (Am. Comp. Count I at ¶ 2.)

**4.** Defendants additionally maintain that the Unfair Claims Settlement Practices Act does not provide a private right of action. (Def. Br. at 5.) In *Pierzga v. The Ohio Casualty Group,* the Appellate Division noted that "[i]t ... appears that exclusive regulatory jurisdiction of insurance companies, at least with respect to payment of claims, is within the Department of Insurance." 208 N.J.Super. 40, 504 A.2d 1200, 1204 (1986), *cert. denied,*

104 N.J. 399, 517 A.2d 402 (1986) (citing N.J.S.A. Title 17, Chapter 17 *et seq.*). Almost a decade later, though, the New Jersey Supreme Court noted that with respect to the insurance industry, "[a]lthough the regulatory framework does not create a private cause of action, it does declare state policy and we do not think that finding a cause of action for the breach of the duty of good faith and fair dealing would conflict with that policy." *Pickett,* 621 A.2d at 451.

Shortly after *Pickett* was decided, the Third Circuit recognized the inconsistencies between these two rulings. In declining to address whether a private plaintiff has standing to bring a cause of action under N.J.S.A. 17B:30–12, the court there noted that the question of whether a private right of action

sis added); *see Pickett*, 621 A.2d at 451. Count IV will be dismissed.[5]

### B. *Motion to Strike*

Finally, Defendant One Beacon seeks to strike certain portions of the Amended Complaint relating to: designation of trial counsel; certification that no other actions are pending; certification regarding demand for service of pleadings and interrogatories; demand for certification of insurance information; request for reproduction of documents addressed to defendants; and demand for answers to interrogatories.

■■ Rule 12(f) of the Federal Rules of Civil Procedure provides:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party . . ., the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

"The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters . . . ." *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F.Supp.2d 393, 402 (E.D.Pa.2002) (internal citations omitted).

Not only are the portions of the Amended Complaint at issue here immaterial, Plaintiff does not oppose One Beacon's motion. Accordingly, those sections of the Amended Complaint enumerated above will be stricken.

exists "is not sufficiently settled." *PAS v. Travelers Insur. Co.*, 7 F.3d 349, 357 n. 8 (3d Cir.1993). In light of the Court's holding that Count IV will be dismissed, this Court too will leave this question up to New Jersey courts to resolve.

### IV. CONCLUSION

For the reasons stated, Plaintiff's common law fraud claims and the claims under the New Jersey Consumer Fraud Act will be dismissed; so too will Plaintiff's claims under the New Jersey Unfair Claim Settlement Act. Additionally, certain sections of the Amended Complaint will be stricken. The accompanying Order is entered.

### ORDER

This matter is before the Court upon motion by Defendant One Beacon under Rule 12(b)(6) to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted [Docket Item 26]; and

The Court having considered the written submission in support of the motion by Defendant; and the written opposition thereto submitted by Plaintiff; and

For the reasons expressed in the Opinion of today's date; and for good cause shown;

IT IS this 15th day of March, 2005 hereby

ORDERED that the motion by One Beacon will be **GRANTED IN PART** and that Count II and IV will be dismissed; and that the common law fraud claim in Count I will be dismissed; and

IT IS FURTHER ORDERED that the following material will be stricken from the Amended Complaint:

(a) designation of trial counsel;

(b) certification that no other actions are pending;

5. Indeed, Plaintiff does not offer any coherent opposition to the dismissal of Count IV. (Pl. Br. at 10.)

(c) certification regarding demand for service of pleadings and interrogatories;

(d) demand for certification of insurance information;

(e) request for reproduction of documents addressed to defendants; and

(f) demand for answers to interrogatories.